1    BORIS FELDMAN, State Bar No. 128838
      boris.feldman@wsgr.com
2    IGNACIO E. SALCEDA, State Bar No. 164017
      isalceda@wsgr.com
3    DIANE M. WALTERS, State Bar No. 148136
      dwalters@wsgr.com
4    DOMINIQUE-CHANTALE ALEPIN, State Bar No. 241648
      dalepin@wsgr.com
5    BRYAN J. KETROSER, State Bar No. 239105
      bketroser@wsgr.com
6    WILSON SONSINI GOODRICH & ROSATI
      Professional Corporation
7    650 Page Mill Road
      Palo Alto, CA 94304-1050
8    Telephone:  (650) 493-9300
      Facsimile:   (650) 565-5100

9

10   Attorneys for Defendants
     Euan S. Thomson, Wayne Wu, Li Yu, Robert S.
11   Weiss, Elizabeth Dávila, John P. Wareham,
     Robert E. McNamara, John R. Adler, Jr., and
12   Nominal Defendant Accuray Incorporated

13

14              UNITED STATES DISTRICT COURT

15           NORTHERN DISTRICT OF CALIFORNIA

16                OAKLAND DIVISION

| | |
|---|---|
| 17   IN RE ACCURAY, INC. SHAREHOLDER DERIVATIVE LITIGATION | ) Lead Case No. C 09-05580-CW |
| 18   _____ | ) **DEFENDANTS' NOTICE OF** |
| | ) **MOTION AND MOTION TO** |
| 19   This Document Relates to: | ) **DISMISS AND MEMORANDUM OF** |
| | ) **POINTS AND AUTHORITIES IN** |
| 20         ALL ACTIONS | ) **SUPPORT THEREOF** |
| | ) |
| 21 | ) Date:     July 1, 2010 |
| | ) Time:    2:00 p.m. |
| 22 | ) Before:  Hon. Claudia Wilken |
| 23 | ) |
| 24 | ) |
| 25 | ) |
| 26 | ) |
| 27   _____ | ) |

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

STATEMENT OF ISSUES (Civil L.R. 7-4(a)(3)) ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 2

ARGUMENT .............................................................................................................................. 4

I.      PLAINTIFFS LACK STANDING TO PURSUE DERIVATIVE CLAIMS ................... 4

II.     THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO
        PLEAD DEMAND FUTILITY WITH SUFFICIENT PARTICULARITY ..................... 5

        A.      Applicable Legal Standards:  the Demand Requirement ......................................... 5

        B.      Plaintiffs Fail to Raise a Reasonable Doubt as to the Disinterestedness of
                the Outside Director Defendants .............................................................................. 7

        C.      Plaintiffs Fail to Raise a Reasonable Doubt as to Independence ........................... 14

        D.      Plaintiffs Fail to Rebut the Business Judgment Rule as to the Repurchases ......... 15

III.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM .................................... 17

        A.      Plaintiffs Fail to Plead Sufficient Facts to Support the Federal Claims ............... 17

                1.      The Section 10(b) Claims Should Be Dismissed (Counts I & II) ............. 17

                2.      The Section 20(a) Claims Should Be Dismissed (Counts III and IV) ...... 19

        B.      The State Law Claims Should Be Dismissed ........................................................ 19

                1.      The Breach of Fiduciary Duty Claims Relating to the Dissemination
                        of Allegedly False Statements Should Be Dismissed (Counts VI &
                        VII) ............................................................................................................ 20

                2.      The Repurchase Claims Should Be Dismissed (Counts V and VIII) ........ 21

                3.      The Waste Claim Should Be Dismissed (Count IX) ................................. 22

                4.      The Unjust Enrichment Claim Should Be Dismissed (Count X) .............. 23

                5.      The New Claims for Insider Trading Also Fail (Counts XI-XII) ............. 23

                        a.      The Allegations Fail under Delaware Law (Count XII) ................ 24

                        b.      The Section 25402 Claim also Fails (Count XI) ........................... 24

CONCLUSION ................................................................................................................ 25

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Aronson v. Lewis,*
    473 A.2d 805 (Del. 1984), *overruled in part on other grounds,*

5

    *Brehm,* 746 A.2d 244 .......................................................................................*passim*

6

*Arthur Children's Trust v. Keim,*
    994 F.2d 1390 (9th Cir. 1993)........................................................................... 14

7

*Beam v. Stewart,*

8

    845 A.2d 1040 (Del. 2004)............................................................................ 6, 15

9

*Berson v. Applied Signal Technology, Inc.,*
    527 F.3d 982 (9th Cir. 2008)............................................................................. 18

10

*Braddock v. Zimmerman,*

11

    906 A.2d 776 (Del. 2006)..................................................................................... 5

12

*Brehm v. Eisner,*
    746 A.2d 244 (Del. 2000).......................................................................*passim*

13

*Desimone v. Barrows,*

14

    924 A.2d 908 (Del. Ch. 2007) ............................................................................. 6

15

*DiLorenzo v. Norton,*
    2009 WL 2381327 (D.D.C. July 31, 2009) ......................................................... 5

16

*Fleer Corp. v. Topps Chewing Gum, Inc.,*

17

    539 A.2d 1060 (Del. 1988).................................................................................. 23

18

*Grobow v. Perot,*
    539 A.2d 180 (Del. 1988), *overruled in part on other grounds,*

19

    *Brehm,* 746 A.2d 244 ..................................................................... 10, 14, 15, 16

20

*Guttman v. Huang,*
    823 A.2d 492 (Del. Ch. 2003)...................................................................7, 12, 24

21

*Hawaii Laborers Pension Fund v. Farrell,*

22

    2007 WL 5255035 (C.D. Cal. Aug. 23, 2007) ................................................... 5

23

*Highland Legacy Ltd. v. Singer,*
    2006 WL 741939 (Del. Ch. Mar. 17, 2006) ................................................ 10, 15

24

*Howard v. Everex Sys., Inc.,*

25

    228 F.3d 1057 (9th Cir. 2000)...................................................................... 14, 19

26

*In re 3Com Corp. S'holders Litig.,*
    1999 WL 1009210 (Del. Ch. Oct. 25, 1999) ..................................................... 22

27

*In re Am. Int'l. Group, Inc. Deriv. Litig.,*

28

    2010 WL 1245000 (S.D.N.Y. Mar. 30, 2010) ............................................ 11, 13

DEFENDANTS' MOTION TO DISMISS
CASE NO. C-09-05580-CW

*In re Autodesk, Inc. S'holder Deriv. Litig.*,
   2008 WL 5234264 (N.D. Cal. Dec. 15, 2008) .................................................... 10

*In re Caremark Int'l Inc. Deriv. Litig.*,
   698 A.2d 959 (Del. Ch. 1996) ..................................................... 13, 14, 21

*In re Citigroup, Inc. S'holder Deriv. Litig.*,
   2009 WL 2610746 (S.D.N.Y. Aug. 25, 2009) .................................... 21, 22

*In re Citigroup Inc. Shareholder Deriv. Litig.*,
   964 A.2d 106 (Del. Ch. 2009) ............................................................... *passim*

*In re Computer Scis. Corp. Deriv. Litig.*,
   2007 WL 1321715 (C.D. Cal. Mar. 26, 2007) ............................................ 5

*In re Downey Sec. Litig.*,
   2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ....................................... 18, 19

*In re Ferro Corp. Deriv. Litig.*,
   511 F.3d 611 (6th Cir. 2008) ................................................................... 13

*In re Lear Corp. S'holder Litig.*, 967 A.2d, 640 (Del. Ch. 2008) .................... 20

*In re MIPS Techs., Inc. Deriv. Litig.*,
   2008 WL 3823726 (N.D. Cal. Aug. 13, 2008) .......................................... 10

*In re Morgan Stanley Deriv. Litig.*,
   542 F. Supp. 2d 317 (S.D.N.Y. 2008) .............................................. 16, 17

*In re NutriSystem, Inc. Deriv. Litig.*,
   666 F. Supp. 2d 501 (E.D. Pa. 2009) ................................................... 23

*In re Oracle Corp., Deriv. Litig.*,
   867 A.2d 904 (Del. Ch. 2004), *aff'd mem.*, 872 A.2d 960 (Del. 2005) ........... 24

*In re Rackable Systems, Inc. Sec. Litig.*,
   2010 WL 199703 (N.D. Cal. Jan. 13, 2010) .......................................... 18

*In re Sagent Tech., Inc. Deriv. Litig.*,
   278 F. Supp. 2d 1079 (N.D. Cal. 2003) ......................................... 5, 12, 19

*In re Silicon Graphics, Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ................................................................ *passim*

*In re United Telecomms., Inc. Sec. Litig.*,
   1993 WL 100202 (D. Kan. Mar. 4, 1993) .............................................. 23

*In re VeriFone Holdings, Inc. S'holder Deriv. Litig.*,
   2009 WL 1458233 (N.D. Cal. May 26, 2009) ........................................... 8

*In re VeriSign, Inc., Deriv. Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) ................................................. *passim*

*In re Walt Disney Co. Deriv. Litig.*,
   907 A.2d 693 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006) ........................ 20

DEFENDANTS' MOTION TO DISMISS
CASE NO. C-09-05580-CW

1

*Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*,
    432 F. Supp. 2d 571 (E.D. Va. 2006) ............................................................... 13

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991) ......................................................................................... 5

*Lewis v. Chiles*,
    719 F.2d 1044 (9th Cir. 1983) ........................................................................ 4

*Louisiana Mun. Police Employees Ret. Sys. v. Blankfein*,
    2009 WL 1422868 (S.D.N.Y. May 19, 2009) ................................................ 10

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) ........................................................................... 19

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines*,
    534 F.3d 779 (D.C. Cir. 2008) ...................................................................... 11

*Potter v. Hughes*,
    546 F.3d 1051 (9th Cir. 2008) ..................................................................... 5, 9

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) ............................................................................ 6, 8

*Rattner v. Bidzos*,
    2003 WL 22284323 (Del. Ch. Sept. 30, 2003) ............................................. 12

*Seminaris v. Landa*,
    662 A.2d 1350 (Del. Ch. 1995) ................................................................. 6, 13

*South Ferry LP, #2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) .......................................................................... 8

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) ........................................................................ 14, 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ................................................................................. 17, 18

*Vess v. Ciba-Giegy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................. 19, 20

*Wood v. Baum*,
    953 A.2d 136 (Del. 2008) .................................................................. 8, 10, 21

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATUTES**

Cal. Corp. Code § 25402 ................................................................................. 12, 24, 25

Cal. Corp. Code § 25502.5 ..................................................................................... 25

Cal. Corp. Code § 25506(b) .................................................................................... 25

Del. Code Ann. tit. 8, § 160(a) ............................................................................... 16

Del. Code Ann. tit. 8, § 102(b)(7) ............................................................................ 7

15 U.S.C. § 78u-5(c)(1)(A) .................................................................................... 18

**RULES**

Fed. R. Civ. P. 8 ............................................................................................... 1, 19

Fed. R. Civ. P. 9(b) ...................................................................................... 1, 19, 20

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1

Fed. R. Civ. P. 23.1 ..................................................................................... 1, 4, 5, 9

**MISCELLANEOUS**

1 Harold Marsh, Jr. & Robert H. Volk, *Practice Under California Securities Laws*
   § 14.04[3][c] (rev. ed. 2002) ............................................................................ 25

Donald E. Kieso, et al., INTERMEDIATE ACCOUNTING (10th Ed. 2001) ......................................... 3

**NOTICE OF MOTION AND MOTION TO DISMISS**

Please take notice that on July 1, 2010 at 2:00 p.m., Nominal Defendant Accuray, Inc. ("Accuray" or "Company"), Euan S. Thomson, Wayne Wu, Li Yu, Robert S. Weiss, Elizabeth Dávila, John P. Wareham, Robert E. McNamara, and John R. Adler, Jr. (collectively, "Defendants") will and hereby do move for an order dismissing the Verified Amended Consolidated Shareholder Derivative Complaint ("Amended Complaint" or "¶ _"), pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(6) and 23.1, the Private Securities Litigation Reform Act (the "Reform Act"), and applicable state law.  The motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Request for Judicial Notice; the Declaration of Diane M. Walters and attached exhibits; the pleadings, records, and papers filed in this action; oral argument; and any other matters properly before the Court.

Defendants move to dismiss on the following grounds:  (1) plaintiffs lack standing because they have not complied with the ownership requirements of Rule 23.1; (2) plaintiffs lack standing because they have not alleged particularized facts showing demand excusal; and (3) plaintiffs have not properly pleaded any claims upon which relief can be granted.

**STATEMENT OF ISSUES (Civil L.R. 7-4(a)(3))**

1.    Whether plaintiffs have satisfied the ownership requirements of Rule 23.1?

2.    Whether plaintiffs have alleged demand futility with sufficient particularity?

3.    Whether plaintiffs have adequately pleaded their federal and state law claims?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Accuray designs and sells the CyberKnife® Robotic Radiosurgery System, which provides cancer patients with a non-invasive, pain-free alternative to traditional surgery. Beginning in late January 2008, Accuray disclosed that it was removing a number of contracts for the CyberKnife from its backlog.  Nearly two years later, the first of three shareholder derivative lawsuits relating to these announcements was filed in this Court, purportedly on behalf of Accuray, against current and former officers and directors of the Company.

After Defendants moved to dismiss the consolidated complaint (the "Complaint"), a

DEFENDANTS' MOTION TO DISMISS
CASE NO. C-09-05580-CW

1   fourth derivative complaint was filed.  Instead of opposing the motion to dismiss, plaintiffs

2   sought consent to file an amended complaint to incorporate additional allegations and claims

3   from the "new" complaint.  The Amended Complaint thus represents plaintiffs' third attempt

4   (including the initial complaints, the Complaint, and the Amended Complaint) to plead viable

5   claims against the Defendants.  Despite having had multiple opportunities, however, plaintiffs

6   still fail to satisfy basic requirements necessary to pursue the asserted derivative claims.

7           Like the Complaint, the Amended Complaint fails on multiple grounds.  *First*, plaintiffs'

8   continued refusal to allege the dates on which they purchased Accuray stock is fatal to their

9   claim because it prevents the Court from determining whether they were shareholders at the time

10   of the alleged misconduct.  Despite multiple opportunities, the Amended Complaint still suffers

11   from this basic defect.  Plaintiffs thus lack standing to pursue their claims.

12           *Second*, plaintiffs fail to plead particularized facts showing that a pre-litigation demand

13   was excused.  In order to pursue derivative claims on behalf of Accuray, plaintiffs must either

14   first make a demand on Accuray's Board of Directors to initiate action (which plaintiffs concede

15   they did not do) or plead with sufficient particularity that such a demand would have been futile

16   and thus excused.  As before, however, plaintiffs continue to rely on conclusory demand futility

17   allegations which fall far short of meeting plaintiffs' rigorous pleading burden.

18           *Third*, the Amended Complaint fails to state a claim upon which relief may be granted.

19   Despite its heft, the Amended Complaint fails to plead facts sufficient to support the laundry list

20   of claims.  In particular, plaintiffs fail to provide individualized allegations regarding each

21   defendant's purported misconduct.  Plaintiffs' federal claims thus do not withstand the Reform

22   Act's pleading requirements.  The state claims are also bereft of support and thus deficient.

## BACKGROUND

24           Accuray designs, develops, and sells the CyberKnife, an image-guided robotic

25   radiosurgery system designed to treat solid tumors.  ¶¶ 2, 30.  Key benefits of the CyberKnife

26   system include:  (1) it can be used to treat tumors that cannot be treated through surgery due to

27   their location, number, size, shape or proximity to vital organs; (2) the procedure can be

28   performed on an outpatient basis and does not involve any cutting or anesthesia; and (3) the

DEFENDANTS' MOTION TO DISMISS
CASE NO. C-09-05580-CW

1    procedure requires little recovery time.[1]  Each system costs several million dollars.  Ex. A at 41.

2           On February 7, 2007, Accuray conducted an initial public offering ("IPO").  ¶ 71.  In its

3    Registration Statement, Accuray included information regarding the amount of backlog,[2] and

4    stated that the figure included only "deferred revenue and future payments that our customers are

5    contractually committed to make, but which we have not yet received."  *Id.*  Accuray further

6    explained that it "may be unable to convert all of this backlog into recognized revenue due to

7    factors outside our control."  Ex. A at 44.  In a May 1, 2007 press release regarding 3Q07 results,

8    Accuray disclosed that it would begin including contracts with contingencies in backlog.  ¶ 68.

9           On August 30, 2007, the Board of Directors authorized the repurchase of $25 million of

10   Accuray shares (¶ 121), and the Company commenced repurchasing shares.  ¶ 125.

11          Beginning in late January 2008, Accuray disclosed that a number of contracts were being

12   removed from backlog due to various factors, including the uncertain economy, tightening credit

13   markets, and proposed regulatory changes.  ¶¶ 106-114.

14          In November 2009, the first of three derivative actions was filed in this Court.  The

15   Complaint was filed on December 23, 2009.  Defendants moved to dismiss on February 5, 2010.

16          On March 16, 2010, plaintiff Israni ("Israni") filed a fourth complaint in this Court,[3] and

17   plaintiffs sought consent to file an amended consolidated complaint.  The Amended Complaint

18   was filed on April 8, 2010.  The Amended Complaint generally alleges that the Defendants

19   misrepresented material information regarding Accuray's business and, in particular, its backlog,

20   and asserts twelve causes of action for alleged breaches of fiduciary duties, waste, unjust

21   enrichment, insider selling, and violations of Sections 10(b) and 20(a) of the Securities Exchange

22   _____

23          [1] Exhibit ("Ex. _") A to the Declaration of Diane Walters, filed concurrently herewith, at 3.

24          [2] Backlog is not reported in financial statements and is not subject to Generally Accepted
     Accounting Principles ("GAAP").  *See* Donald E. Kieso, et al., INTERMEDIATE ACCOUNTING, at 4
25   (10th Ed. 2001) (Ex. J).  Thus, companies have discretion in calculating and reporting backlog.

26          [3] Israni previously filed a derivative action asserting similar claims in state court.  Defendants
     filed demurrers seeking to dismiss the state complaint in October 2009.  Instead of opposing
27   defendants' demurrers, Israni filed an amended complaint.  Defendants filed demurrers seeking
     to dismiss the amended complaint on February 2, 2010.  Once again, Israni did not oppose the
28   demurrers, instead attempting to stay, but ultimately dismissing, the action.  (Ex. K).

DEFENDANTS' MOTION TO DISMISS
                                                 CASE NO. C-09-05580-CW

1    Act of 1934.

2         At the time the Israni complaint and the Amended Complaint were filed, Accuray's

3    Board of Directors (the "Board") consisted of seven individuals:  Euan Thomson, Louis Lavigne,

4    Jr., Dennis Winger, Elizabeth Dávila, Wayne Wu, Li Yu, and Robert Weiss.  ¶ 137.  With the

5    exception of Dr. Thomson, all of the Board members are outside directors.  Ex. B at 10-12.

6    Plaintiffs neither name as defendants nor otherwise reference Messrs. Lavigne or Winger, other

7    than to note that they currently serve on the Board.  ¶ 137.  The six outside directors are

8    prominent leaders in the financial and medical communities.  Ex. B at 10-12.

9                                    **ARGUMENT**

10   **I.**       **PLAINTIFFS LACK STANDING TO PURSUE DERIVATIVE CLAIMS**

11         Federal Rule of Civil Procedure 23.1 requires a derivative plaintiff to plead that he "was a

12    shareholder . . . at the time of the transaction complained of[.]"  Such a plaintiff must also "retain

13    ownership of the stock for the duration of the lawsuit."  *Lewis v. Chiles*, 719 F.2d 1044, 1047

14    (9th Cir. 1983).  Where, as here, shareholder plaintiffs fail to satisfy this threshold requirement,

15    they lack standing to pursue shareholder derivative claims.

16         Once again, plaintiffs fail to provide the basic information necessary to satisfy this

17    requirement.  As in the Complaint, the Amended Complaint does not allege the dates on which

18    plaintiffs purchased their Accuray stock.  Despite the fact that Defendants challenged this same

19    deficiency in the prior motion to dismiss, plaintiffs still failed to cure the defective allegations.

20    Instead, three of the four plaintiffs make only vague assertions that they were "shareholder[s] of

21    Accuray at the time of the continuing wrong complained of herein," which "included the

22    issuance of false and misleading statements . . . from about February 2007 through January

23    2009" and "the improper authorization and repurchase of Accuray's shares to further inflate

24    Accuray's stock price from about August 2007 through June of 2008."  ¶ 27 (Beebe); ¶¶ 28-29

25    (similar allegations concerning Bachinski and Borrelli).  The fourth plaintiff merely asserts that

26    he "was a shareholder of Accuray at the time of the wrongdoing complained of[.]"  ¶ 26.

27    Moreover, each verification simply reads:  "I am a shareholder of Accuray Incorporated."

28         These conclusory statements fail to confer standing because they do not establish *when*

DEFENDANTS' MOTION TO DISMISS
CASE NO. C-09-05580-CW

1   plaintiffs purchased their shares.  *See, e.g.*, *In re VeriSign, Inc., Deriv. Litig.*, 531 F. Supp. 2d

2   1173, 1202 (N.D. Cal. 2007) ("***plaintiffs must unambiguously indicate*** in any amended

3   complaint ***the dates they purchased*** . . . stock") (citation omitted; emphasis added); *In re Sagent*

4   *Tech., Inc. Deriv. Litig.*, 278 F. Supp. 2d 1079, 1096 (N.D. Cal. 2003) ("[T]he complaint must

5   indicate when plaintiffs bought stock in Sagent[.]").  Numerous courts have rejected similarly

6   vague allegations as insufficient to confer standing.[4]  Because plaintiffs fail to satisfy this

7   threshold requirement, the Amended Complaint must be dismissed.

8   **II.     THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO**
    **PLEAD DEMAND FUTILITY WITH SUFFICIENT PARTICULARITY**
9

10          Even if the Court were to find that plaintiffs sufficiently pleaded contemporaneous and

11  continuous ownership – which Defendants dispute – the Amended Complaint should still be

12  dismissed for failure to plead sufficiently demand futility.

13          **A.      Applicable Legal Standards:  the Demand Requirement**

14          "Pursuant to Rule 23.1, a putative derivative plaintiff can initiate a derivative action only

15  if he or she makes an adequate demand on the Board under applicable state law."  *Potter v.*

16  *Hughes*, 546 F.3d 1051, 1055 (9th Cir. 2008).  This "is a substantive right designed to give a

17  corporation the opportunity to rectify an alleged wrong without litigation, and to control any

18  litigation which does arise."  *Braddock v. Zimmerman*, 906 A.2d 776, 784 (Del. 2006) (citations

19  omitted).  Since Accuray is a Delaware corporation (¶ 30), Delaware substantive law governs the

20  demand analysis.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991).

21          Delaware law imposes "stringent requirements of factual particularity" on plaintiffs who

22  seek to excuse the failure to make a demand.  *Brehm v. Eisner*, 746 A.2d 244, 254-55 (Del.

23

24          [4] *See, e.g.*, *DiLorenzo v. Norton*, 2009 WL 2381327, at *3 (D.D.C. July 31, 2009) ("Plaintiff
    alleges that he 'is and at relevant times was' a shareholder. … Such a thin allegation, however, is
25  insufficiently particular to satisfy Rule 23.1."); *VeriSign*, 531 F. Supp. 2d at 1202 (allegations
    that plaintiffs "'owned VeriSign stock during the Relevant Period' (defined as January 1, 1998,
26  to the present)" insufficient) (citation omitted); *Hawaii Laborers Pension Fund v. Farrell*, 2007
    WL 5255035, at *8-9 (C.D. Cal. Aug. 23, 2007) (allegation that plaintiff "is, and at relevant
27  times hereto was, a shareholder" insufficient); *In re Computer Scis. Corp. Deriv. Litig.*, 2007 WL
    1321715, at *15 (C.D. Cal. Mar. 26, 2007) (same).
28

DEFENDANTS' MOTION TO DISMISS
                                                              CASE NO. C-09-05580-CW

2000); *see In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 989-90 (9th Cir. 1999) ("*SGI*") (plaintiff must "plead with particularity the reasons why such demand would have been futile"). Conclusory statements are not considered "expressly pleaded facts," and "inferences that are not objectively reasonable" cannot be drawn in plaintiffs' favor. *Beam v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004) (citations omitted).  Plaintiffs cannot simply make allegations against a board or committee, but rather, must plead particularized facts showing a disabling interest "specific to each director." *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007).

There are two tests to determine whether demand is excused.  If a plaintiff challenges an affirmative board decision, under *Aronson v. Lewis*, demand is excused only if the plaintiff pleads particularized facts creating a reasonable doubt that (1) a majority of the directors is disinterested and independent, or (2) the transaction was the product of a valid exercise of business judgment.  473 A.2d 805, 814 (Del. 1984), *overruled in part on other grounds*, *Brehm*, 746 A.2d 244.  The only claims in the Amended Complaint addressing an affirmative Board decision relate to the authorization of a $25 million share repurchase.

Where a plaintiff challenges something other than a board decision, the second part of *Aronson* drops out and the test becomes whether the plaintiff has pleaded particularized facts that "create a reasonable doubt that . . . the board . . . could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).  To plead a disqualifying interest, a plaintiff must offer particularized facts demonstrating that a director "will receive a personal financial benefit from a transaction that is not equally shared by the stockholders," or that "a corporate decision will have a materially detrimental impact on a director, but not the corporation and the stockholders." *Id*. at 936.  To plead a lack of independence, plaintiffs must "show that the directors are 'beholden' to the [other directors] or so under their influence that their discretion would be sterilized." *Id*.  All but the repurchase claims are subject to the *Rales* standard.

A director may be deemed interested where plaintiffs show "such egregious conduct . . . that [the director] face[s] a substantial likelihood of liability." *Seminaris v. Landa*, 662 A.2d 1350, 1355 (Del. Ch. 1995).  The "mere threat" of liability, however, is insufficient. *Aronson*,

1   473 A.2d at 815.  Moreover, the burden is even higher where, as here, there is an exculpatory

2   provision in the Company's certificate of incorporation, which provides:  "[t]o the maximum

3   extent permitted by the Delaware General Corporation Law . . . a director of [Accuray] shall not

4   be personally liable to the Corporation or its stockholders for monetary damages for breach of

5   fiduciary duty as a director."  Ex. C at 3.  In the face of this type of provision, plaintiffs must

6   plead particularized facts demonstrating that defendants breached their duty of loyalty, acted in

7   bad faith or engaged in intentional misconduct.  Del. Code Ann. tit. 8, § 102(b)(7); *see also*

8   *Guttman v. Huang*, 823 A.2d 492, 501 (Del. Ch. 2003) (plaintiffs must plead non-exculpated

9   claim based on particularized facts) (citation omitted).

10          Because the Board has seven members, plaintiffs must plead particularized facts showing

11  that four directors are not sufficiently disinterested and independent to have considered a pre-suit

12  demand.  Plaintiffs fail to make the requisite showing as to *any* of the outside directors.  The

13  Amended Complaint does not contain a single allegation relating to non-defendant directors

14  Winger and Lavigne; plaintiffs thus concede that they are disinterested and independent and

15  capable of considering a demand.  *Supra* at 4.  In addition, plaintiffs' own allegations refute any

16  suggestion of reasonable doubt as to Ms. Dávila, given that she joined the Board in February 2008

17  (¶ 36) – long after the IPO and *after* plaintiffs allege that the purported "truth" began to be

18  revealed.  ¶ 105.  Plaintiffs' attempt to raise a reasonable doubt as to the disinterestedness and

19  independence of Messrs. Wu, Weiss and Yu is also unavailing.  Mere committee memberships and

20  one stock sale do not satisfy plaintiffs' rigorous pleading burden.[5]

21          **B.      Plaintiffs Fail to Raise a Reasonable Doubt as to the Disinterestedness of the
22                    Outside Director Defendants**

23          Plaintiffs allege that four outside Director Defendants are not disinterested because they

24  face a substantial likelihood of liability, offering a catalog of conclusory and generic allegations

25  utterly bereft of *particularized facts*.  None of these allegations suffices.

26  _____

27          [5] Because all of the outside directors are clearly disinterested and independent, this Motion
28  does not address Dr. Thomson, the sole inside director, in the demand analysis.

DEFENDANTS' MOTION TO DISMISS
CASE NO. C-09-05580-CW

1        <u>Approval of SEC Filings and "Oversight" of and "Participation" in Statements</u>.  Plaintiffs

2 assert that several outside directors face a substantial likelihood of liability because they either

3 "approved and signed the Company's Forms 10-K" or "signed Accuray's Registration

4 Statement," both of which are alleged to have been false and/or misleading.  ¶ 139.[6]  As the

5 Delaware Supreme Court has made clear, however, "execution of . . . financial reports, without

6 more, is insufficient to create an inference that the directors had actual or constructive notice of

7 any illegality."  *Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008).  Plaintiffs offer no facts showing

8 that *any* director had reason to believe that any statement was misleading.[7]

9        Regardless, the allegations regarding the Registration Statement are fatally flawed.  For

10 example, plaintiffs claim that the February 7, 2007 Registration Statement was false and

11 misleading because the change in backlog reporting that Accuray announced on May 1, 2007

12 allegedly already was in effect at the time of the IPO.  ¶ 7.  Plaintiffs' contention, however,

13 misconstrues the cited statements.  Backlog is calculated as of particular date.  Thus, when

14 Accuray announced on May 1, 2007 the financial results for the quarter ended March 31, 2007,

15 and further disclosed that it had made a decision to begin including contingent contracts in

16 reported backlog, the reported backlog was as of March 31, 2007, *i.e.*, the end of the quarter.

17 ¶ 81 ("As of March 31, 2007 the company's backlog, which the company now defines as backlog

18 under signed non-contingent contracts as well as backlog under signed contingent contracts . . .

19 was approximately $559 million.").  The Registration Statement, on the other hand, which was

20 initially filed in November 2006, made clear that the reported backlog information was ***as of***

21 ***September 30, 2006***.  Ex. A at 44.  Thus, Accuray's May 1, 2007 disclosures regarding backlog

22

23      [6] Such allegations are properly analyzed under *Rales*.  *See, e.g. In re VeriFone Holdings, Inc. S'holder Deriv. Litig.*, 2009 WL 1458233, at *5 (N.D. Cal. May 26, 2009).

24      [7] Plaintiffs are incorrect in asserting that "when the information at issue pertains to a

25 company's core business or service . . . knowledge of that information may be imputed to the entire board through inference as a matter of law."  ¶ 138.  Although the Ninth Circuit has

26 recognized the validity – in rare circumstances not present here – of a "core operations" inference in securities class actions, that inference applies only to "management" defendants.

27 *See South Ferry LP, #2 v. Killinger*, 542 F.3d 776, 783, 785-86 (9th Cir. 2008).  Here, six of the seven directors at issue are *non-management, outside directors*, to whom the "core operations"

28 inference is inapplicable.

         DEFENDANTS' MOTION TO DISMISS
CASE NO. C-09-05580-CW

1   did not affect the disclosures in the Registration Statement because, as Accuray made clear at the

2   time, the two disclosures used different dates and methodologies for calculating backlog.  The

3   mere fact that Accuray changed its backlog reporting four months after the IPO did not render

4   any statements in the Registration Statement false when made.[8]

5         Audit Committee Membership.  Plaintiffs assert that, "[a]s members of the Audit

6   Committee," Messrs. Wu, Yu and Weiss, and Ms. Dávila, "were responsible for overseeing and

7   directly participating in" the allegedly false press releases, conference calls, and filings.  ¶ 150.

8   Instead of alleging particularized facts, however, plaintiffs simply claim that these defendants

9   "reviewed and approved" the challenged statements.  *Id.*  Such allegations are inadequate:

> Pleading that the director defendants . . . "caused or allowed" the Company to
> issue certain statements is not sufficient particularized pleading to excuse demand
> under Rule 23.1.  It is unclear from such allegations how the board was actually
> involved in creating or approving the statements, factual details that are *crucial* to
> determining whether demand . . . would have been excused as futile.

13   *In re Citigroup Inc. Shareholder Deriv. Litig.*, 964 A.2d 106, 133 n.88 (Del. Ch. 2009).[9]  In fact,

14   plaintiffs' allegations are based on a misreading of the Audit Committee Charter.  Although

15   plaintiffs assert (¶ 149) that the Audit Committee was required to "review[] and discuss[]

16   information presented in the Company's earnings press releases and other information provided

17   to analysts and rating agencies," the Charter provided that such discussions "may be general in

18   nature" and "need not take place in advance of each earnings release or each instance in which

19   the Company provides earnings guidance."  Ex. D at Appendix A, § IV.8.  Nor was the Audit

20   Committee charged with checking the accuracy of backlog.[10]  Regardless, "liability is not

21   measured by the aspirational standards established by . . . internal documents."  *Citigroup*, 964

---

23      [8] Nor do plaintiffs plead any facts suggesting that the outside directors were aware of
24   "suspicious deals."  *E.g.*, ¶ 73.  Although plaintiffs also reference signatures on Forms 10-K,
     they fail to specify ***any*** contradictory information known by the outside directors.  ¶¶ 94, 103.

25      [9] *See also Potter*, 546 F.3d at 1059 ("[W]here mere approval of corporate action, absent self-
     interest or other . . . bias, is the sole basis for establishing . . . 'wrongdoing' . . . [the] suit should
26   ordinarily be dismissed.") (citations omitted).

27      [10] Indeed, the Charter stated that "the Committee's responsibilities are limited to oversight,"
     and "[i]t is not the responsibility of the Committee . . . to determine that the Company's financial
28   statements and disclosures are complete and accurate[.]"  Ex. D at Appendix A, § I.

DEFENDANTS' MOTION TO DISMISS
CASE NO. C-09-05580-CW

1    A.2d at 135.[11]   At root, plaintiffs suggest that audit committee membership *per se* disables a

2    director from considering a demand.  Such an assertion is "contrary to well-settled Delaware

3    law." *Wood*, 953 A.2d at 142.[12]

4         Approval of Executive Compensation Plans.  Plaintiffs claim the members of the

5    Compensation Committee on July 21, 2007 (Messrs. Wu, Yu, and Weiss) committed "corporate

6    waste" because they approved compensation plans for Dr. Thomson and Mr. Hampton that based

7    14% and 6.5% of FY08 incentive compensation, respectively, on backlog.  ¶¶ 94, 152.  To show

8    waste, a plaintiff must allege facts establishing that "what the corporation has received is so

9    inadequate in value that no person of ordinary, sound business judgment would deem it worth

10   that which the corporation has paid." *Grobow v. Perot*, 539 A.2d 180, 189 (Del. 1988),

11   *overruled in part on other grounds, Brehm*, 746 A.2d 244 (citation omitted).  The test for waste

12   is "extreme" and "rarely satisfied."  *Highland Legacy Ltd. v. Singer*, 2006 WL 741939, at *7

13   (Del. Ch. Mar. 17, 2006).  This is an exceptionally rigorous standard, particularly in the realm of

14   executive compensation where directors have "wide discretion."  *Brehm*, 746 A.2d at 262 n.56.

15   Plaintiffs cannot make the required showing where they fail to plead facts supporting their

16   assertion that the directors knew the backlog numbers to be "improperly inflated."  ¶ 152.

17        Furthermore, Accuray's public filings reveal that inclusion of the backlog component

18   actually *reduced* the awards received by Dr. Thomson and Mr. Hampton.  The FY08 backlog

19   goal for these executives – set *after* Accuray began including contingent sales in reported

20   backlog (¶ 94) – was $800 million.  Ex. D at 20.  Because this goal was not achieved, and

21   because certain other goals also were missed, the Compensation Committee awarded only 40%

22

23        [11] *See also Citigroup*, 964 A.2d at 134 ("The Complaint merely alleges that . . . the director
     defendants reviewed the financial statements pursuant to their responsibilities under the ARM
24   Committee charter.  Thus, I am unable to reasonably conclude that [they] face a substantial
     likelihood of liability."); *Louisiana Mun. Police Employees Ret. Sys. v. Blankfein*, 2009 WL
25   1422868, at *7 (S.D.N.Y. May 19, 2009) (alleged violation of committee rules insufficient).

26        [12] *See also In re Autodesk, Inc. S'holder Deriv. Litig.*, 2008 WL 5234264, at *10 (N.D. Cal.
     Dec. 15, 2008) (allegations that directors served on audit committee insufficient); *In re MIPS
27   Techs., Inc. Deriv. Litig.*, 2008 WL 3823726, at *6 (N.D. Cal. Aug. 13, 2008) (contention that
     committee membership is sufficient "to infer scienter is contrary to well-settled Delaware law.").

28

DEFENDANTS' MOTION TO DISMISS
CASE NO. C-09-05580-CW

1   of the target payments.  *Id*. at 21.  Thus, plaintiffs fail to show that the backlog component

2   increased compensation at all, let alone constituted waste.

3        Approval of Severance Package.  Plaintiffs claim that the members of the Compensation

4   Committee (Ms. Dávila and Messrs. Wu and Yu) committed waste by approving a "generous

5   severance package for defendant McNamara" in connection with his departure from Accuray in

6   September 2008.  ¶ 152.[13]  Plaintiffs allege only that the severance package had a total value of

7   $938,464.  ¶¶ 32, 54.  Plaintiffs ignore that this was dictated by Mr. McNamara's publicly filed

8   employment agreement (which plaintiffs do not challenge).  Ex. D at 36.  "A corporate board's

9   decision to honor the corporation's contractual obligations certainly is not a business decision so

10  egregious or irrational that it could not have been based on a valid assessment of the

11  corporation's best interests."  *In re Am. Int'l. Group, Inc. Deriv. Litig.*, 2010 WL 1245000, at

12  *18 (S.D.N.Y. Mar. 30, 2010) ("*AIG*") (citations omitted) (finding waste claim insufficient to

13  establish demand futility).  In any event, as noted above, boards of directors have wide discretion

14  in matters of compensation, including decisions to grant severance.  *Supra* at 10.[14]

15       Stock Sales.  Notably, five of the six outside directors on the current Board are not

16  alleged to have sold any stock during the relevant period.  In fact, two of the directors actually

17  *purchased* shares during the period of alleged inflation:  Mr. Weiss purchased 100,000 shares

18  (Ex. E) and Ms. Dávila purchased 1,000 shares (Ex. F).  With respect to Mr. Wu, plaintiffs allege

19  only that he "sold 59,000, or 10% of his shares, for proceeds of $1,062,000," and that he

20  therefore "face[s] a substantial likelihood of liability" both in this action under Delaware and

21  California law and in the federal class action.  ¶¶ 146-48.  Plaintiffs are wrong on both counts.

22       "[B]are allegations of stock sales are insufficient" to plead lack of disinterest because

23

24       [13] Plaintiffs incorrectly allege that Mr. Weiss also was a committee member when the
25  severance package was approved.  He was not.  As plaintiffs admit, Mr. Weiss's tenure on the
    Compensation Committee ended in February 2008.  ¶ 35.

26       [14] *See also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines*, 534 F.3d 779,
27  791 (D.C. Cir. 2008) ("[C]ourts rarely second-guess directors' compensation and severance
    decisions because the 'size and structure of executive compensation are inherently matters of
28  judgment.'") (quoting *Brehm*, 746 A.2d at 263).

DEFENDANTS' MOTION TO DISMISS
CASE NO. C-09-05580-CW

1   stock trading by insiders "is not in itself improper under Delaware law." *Sagent*, 278 F. Supp. 2d

2   at 1089.  "Thus, critically, it must be shown that each sale by each individual defendant was

3   entered into and completed on the basis of, and because of, adverse material non-public

4   information." *Rattner v. Bidzos*, 2003 WL 22284323, at *11 (Del. Ch. Sept. 30, 2003) (citations

5   omitted); *see also VeriSign*, 531 F. Supp. 2d at 1221 (section 25402 claims must be pleaded with

6   particularity, "as insider trading under California law is a fraudulent practice").

7        Plaintiffs' allegations fail on multiple grounds.  Among other deficiencies, the Amended

8   Complaint is devoid of "particularized allegations of fact detailing" Mr. Wu's "precise role,"

9   "the information that would have come to [his] attention" in that role, and "any indication as to

10   why [he] would have perceived" alleged "irregularities." *Guttman*, 823 A.2d at 503.  With

11   respect to the transaction itself, plaintiffs concede that Mr. Wu's lone stock sale represented a

12   small percentage of his holdings.  ¶ 146 (alleging 10%).  Even large sales by themselves are

13   insufficient.  *See id.* at 504 ("[T]he mere fact that two of the [seven] directors sold large portions

14   of their stock does not, in my view, support the conclusion that [they] face a real threat of

15   liability.").  The timing of the sale is also innocuous as it took place in the IPO – the first day

16   there was a public market for the shares (¶ 33) and the last day that he would be able to sell them

17   for at least six months due to a lock-up agreement (Ex. A at 29).  *See SGI*, 183 F.3d at 987

18   (allegation of insider trading overlooked the "crucial fact[]" that the sales in question were

19   preceded by a period in which the seller was "legally forbidden to trade").[15]  In sum, a small sale

20   by one outside director does not establish a substantial likelihood of liability for insider selling.

21        Nor does Mr. Wu face a substantial likelihood of liability in the separate class action.

22   The Ninth Circuit has made clear that "insider trading is suspicious only when it is dramatically

23   out of line with prior trading practices at times calculated to maximize the personal benefit from

24   undisclosed inside information." *SGI*, 183 F.3d at 986 (citation omitted).  As explained *supra* at

25   12, neither the timing nor the size of Mr. Wu's stock transactions is suspicious.  Further

26

27        [15] Thus, plaintiffs' attempt to suggest that the lack of sales following the IPO somehow
28   renders the IPO sales suspicious (¶ 146) is unavailing due to the lock-up restrictions on trading.

1    weakening the allegation is Mr. Wu's *purchase* of 30,000 shares in December 2007.  Ex. G; *see,*

2    *e.g.*, *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 594

3    (E.D. Va. 2006) ("The fact that a defendant acquires stock . . . further negates any idea that

4    Defendants had a motive to commit fraud.") (citations omitted).[16]

5        "Insured versus Insured" Provisions and Authorizing a Lawsuit Would "Expose"

6    Directors' "Misconduct".  Plaintiffs claim that demand is excused because D&O insurance

7    policies contain an "insured versus insured exclusion," and that "if the current members of the

8    Board were to sue themselves or certain of the officers of Accuray, there would be no D&O

9    Insurance protection."  ¶ 143.  Courts consistently have rejected such a theory.  *See, e.g.*, *In re*

10   *Ferro Corp. Deriv. Litig.*, 511 F.3d 611, 622 (6th Cir. 2008) ("Delaware courts have rejected

11   claims that an 'insured vs. insured' exclusion in the directors' and officers' insurance policy . . .

12   is sufficient to establish demand futility.") (citations omitted); *AIG*, 2010 WL 1245000, at *9

13   ("insured vs. insured" exclusion argument "has been rejected repeatedly under Delaware law")

14   (citation omitted).  Likewise, plaintiffs' assertion that Messrs. Wu and Weiss could not consider

15   a demand for fear of "expos[ing] their own misconduct, which misconduct also underlies the

16   allegations asserted against [them] in the class action" (¶ 144) shows nothing.  *See, e.g.*,

17   *Seminaris*, 662 A.2d at 1355 ("Plaintiff is merely uttering a slightly altered version of the

18   discredited refrain – 'you can't expect directors to sue themselves.'") (citation omitted).

19       Failure to Ensure Reliable Controls.  Noting that Accuray disclosed certain weaknesses in

20   internal controls, plaintiffs allege that several of the directors "ignored the fact that the Company

21   lacked adequate internal controls," and that the "lack of adequate internal controls allowed"

22   misleading statements concerning backlog.  ¶ 140.  Such a "failure to monitor" claim is "possibly

23   the most difficult theory in corporation law upon which a plaintiff might hope to win a

24   judgment."  *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).  Missing

25   from the Amended Complaint is any explanation of the specific information that each director

26   _____

27       [16] Although Defendants do not, for the purposes of this motion, address the disinterestedness of Dr. Thomson (*see supra* at 7 n.5), it bears noting that he sold only 10.5% of his available
28   holdings during the relevant period (Ex. D at 33-34; Ex. H), *not* 100% as alleged (¶ 148).

1    purportedly knew and ignored.  Moreover, plaintiffs acknowledge that Accuray announced it was

2    undertaking efforts to improve controls.  ¶¶ 103-04.  Such efforts contradict any suggestion that

3    the directors ignored known deficiencies.  Demand is not excused where, as here, plaintiffs fail

4    to plead facts showing either that "the directors utterly failed to implement" any controls or

5    "having implemented such . . . controls, consciously failed to monitor or oversee [their]

6    operation[][.]"  *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006).

7        "Control Person" Liability.  Plaintiffs allege that several of the outside directors are liable

8    under Section 20(a) of the Exchange Act as control persons.  ¶ 142.  To state a Section 20(a)

9    claim, plaintiffs must show *both* "a primary violation of federal securities laws" *and* "that the

10   defendant exercised actual power or control over the primary violator."  *Howard v. Everex Sys.,*

11   *Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  To establish control, a plaintiff must allege specific

12   facts showing that the defendant participated "in the day-to-day affairs of the corporation and

13   [possessed the] power to control corporate actions."  *Id.* (citation omitted).  Plaintiffs do no

14   than assert that the directors, "*as members of the Accuray Board*, each had the power and/or

15   ability to, and did, directly or indirectly, control or influence defendant Thomson, as Accuray's

16   CEO, and defendant McNamara, as Accuray's former CFO[.]"  ¶ 142 (emphasis added).  Once

17   again, the failure to plead particularized facts is fatal to plaintiffs' efforts to establish demand

18   futility.  *See Arthur Children's Trust v. Keim*, 994 F.2d 1390, 1396-97 (9th Cir. 1993) ("A

19   director is not automatically liable as a controlling person."); *Howard*, 228 F.3d at 1067 n.13

20   (activity of outside director who "reviewed and approved" financial statements did not rise to

21   level of day-to-day participation required under § 20(a)).

22        **C.    Plaintiffs Fail to Raise a Reasonable Doubt as to Independence**

23        Plaintiffs next allege that certain "long term relationships" render three of the outside

24   directors dependent.  Plaintiffs assert that Messrs. Yu and Wu are dependent on one another due

25   to their prior employment with Preferred Bank (¶ 154), and that Ms. Dávila is dependent on Dr.

26   Adler due to affiliations with Stanford University (¶ 155).  Both arguments fail.

27        Delaware law is clear that a director does not suffer a disabling dependence unless the

28   person s/he is dominated or controlled by has a disabling personal interest.  *Grobow*, 539 A.2d at

DEFENDANTS' MOTION TO DISMISS
CASE NO. C-09-05580-CW

1   189 (emphasis added).  As explained in Section II.B., *supra*, plaintiffs fail to show that any of the

2   current outside directors has a disabling personal interest.

3          In any event, that Messrs. Yu and Wu worked together at Preferred Bank "[d]uring 1997

4   and 1998" (¶ 154) would not establish dependence even if both lacked disinterestedness.  "[T]o

5   render a director unable to consider demand, a relationship must be of a bias-producing nature.

6   Allegations of . . . a mere outside business relationship, standing alone, are insufficient to raise a

7   reasonable doubt about a director's independence."  *Beam*, 845 A.2d at 1050.

8          The claim that Ms. Dávila lacks independence with respect to Dr. Adler, a Professor of

9   Neurosurgery at Stanford Medical School who sits on various University councils, because of

10  her service on Stanford Graduate School's Advisory Council (¶ 155), is similarly inadequate.

11  Plaintiffs do not point to any relationship between these councils or even allege that the two ever

12  crossed paths at Stanford.  That both are affiliated with Stanford is insufficient to establish a

13  disabling dependence.  In fact, even if they had served on the same council, this would still be

14  insufficient.  *See, e.g.*, *Highland Legacy*, 2006 WL 741939, at *5 (conclusory allegations that

15  two directors "served together on a few boards of unaffiliated companies" insufficient to

16  overcome "presumption of a director's independence") (citations omitted).

17         **D.      Plaintiffs Fail to Rebut the Business Judgment Rule as to the Repurchases**

18         Plaintiffs allege that the directors authorizing the repurchase "knew or consciously

19  disregarded . . . [that] the Company's stock was artificially inflated."  ¶ 141.  Because plaintiffs

20  fail to satisfy the first prong of *Aronson*, plaintiffs must plead facts raising a reasonable doubt

21  that the Board's decision was a valid exercise of business judgment.  *See Aronson*, 473 A.2d at

22  814.  Plaintiffs "'face[] a substantial burden, as the second prong of the *Aronson* test is 'directed

23  to extreme cases in which despite the appearance of independence and disinterest a decision is so

24  extreme or curious as to itself raise a legitimate ground to justify . . . judicial review.'"  *Highland*

25  *Legacy*, 2006 WL 741939, at *7 (citation omitted).  Plaintiffs have not met this burden.

26         A Delaware corporation has the power to deal in its own stock.  *See* Del. Code Ann. tit. 8,

27  § 160(a).  Where, as here, a shareholder alleges that a share repurchase was not a valid exercise

28  of business judgment, Delaware courts "examine the complaint[] . . . to determine whether [its]

DEFENDANTS' MOTION TO DISMISS
CASE NO. C-09-05580-CW

1    well-pleaded facts raise a reasonable doubt sufficient to rebut the presumption that the business

2    judgment rule attaches to the repurchase transaction." *Grobow*, 539 A.2d at 187-88.  Thus, it is

3    not sufficient to simply allege (¶ 141) that the repurchases "were at artificially inflated prices"

4    and that certain directors "knew or consciously disregarded" this supposed fact.

5            The Chancery Court rejected such allegations in *Citigroup*.  Like here, plaintiffs in that

6    case alleged that the directors breached their fiduciary duties by approving false or misleading

7    statements, compounded by committing waste by adopting a share repurchase.  964 A.2d at 111-

8    12.  The court concluded that demand futility was not established by allegations that the

9    defendants "authorized and did not suspend the Company's share repurchase program, which

10   resulted in the Company's buying back over $645 million worth of the Company's shares at

11   artificially inflated prices."  *Id.* at 137.  Noting the high standard for pleading waste, Chancellor

12   Chandler explained that "[o]ther than a conclusory allegation, plaintiffs have alleged nothing that

13   would explain how buying stock at the market price – the price at which presumably ordinary

14   and rational businesspeople were trading the stock – could possibly" meet that standard.  *Id.*

15           Like *Citigroup*, plaintiffs attempt to hold the directors liable for a repurchase *at open*

16   *market prices*, but fail to plead particularized facts demonstrating any knowledge that the stock

17   was inflated.  Indeed, other courts, including the Ninth Circuit, have reached the same conclusion

18   as *Citigroup*.  *See, e.g.*, *SGI*, 183 F.3d at 990 ("[Plaintiff] has not stated facts that demonstrate

19   that the Board intended for the stock repurchase plan to inflate artificially the value of SGI stock

20   in order to facilitate insider trading.  In the absence of such facts, we must presume that the

21   Board had a legitimate business purpose[.]"); *In re Morgan Stanley Deriv. Litig.*, 542 F. Supp. 2d

22   317, 328 (S.D.N.Y. 2008) ("[W]ithout any particularized allegation pointing to improper motive

23   . . . the SAC also fails to create a reasonable doubt with respect to business judgment[.]").

24                                                      * * *

25           In sum, the Amended Complaint should be dismissed for failure to plead demand futility

26   with sufficient particularity.  If Defendants' motion to dismiss is granted on this basis, the Court

27   need not consider the independent grounds also supporting dismissal in Section III, *infra*.

28

                                                              DEFENDANTS' MOTION TO DISMISS
                                                              CASE NO. C-09-05580-CW

1    **III.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM**

2          Even if the Court were to find that demand was excused – which Defendants dispute –

3    the Amended Complaint separately should be dismissed for failure to state a claim.

4          **A.    Plaintiffs Fail to Plead Sufficient Facts to Support the Federal Claims**

5          The Reform Act imposes "[e]xacting pleading requirements" for Section 10(b) claims

6    and "requires plaintiffs to state with particularity both the facts constituting the alleged violation,

7    and the facts evidencing scienter, *i.e.*, the defendant's intention 'to deceive, manipulate, or

8    defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (citation

9    omitted).  To qualify as "strong," the "inference of scienter must be more than merely

10   'reasonable' . . . it must be cogent and compelling, thus strong in light of other explanations." *Id.*

11   at 324.  Because plaintiffs fail to meet this high burden, the Section 10(b) claims fail.

12               **1.    The Section 10(b) Claims Should Be Dismissed (Counts I & II)**

13         Plaintiffs allege that Messrs. Thomson and McNamara violated Section 10(b) and Rule

14   10b-5 by "employ[ing] devices, schemes, and artifices to defraud Accuray," making false and

15   misleading statements and causing Accuray to repurchase $23.9 million of stock at inflated

16   prices.  ¶¶ 161, 170.  To raise a strong inference of scienter, plaintiffs must plead detailed facts

17   showing that each defendant intentionally engaged in misconduct or was deliberately reckless.

18   *SGI*, 183 F.3d 974.  The failure to plead such facts is fatal to plaintiffs' claims.

19         The theory appears to be that Messrs. Thomson and McNamara made false statements in

20   order to inflate Accuray's stock temporarily and during that time orchestrated Board approval of

21   a stock repurchase plan.  Absent from the Amended Complaint, however, is any motive for them

22   to do so.  On the contrary, neither Mr. McNamara nor Dr. Thomson sold any stock during the

23   time that Accuray was repurchasing shares.  As one court explained, the absence of any

24   "allegations whatsoever as to what specific benefit was obtained by any defendant as a result of

25   [the Company's] stock repurchase" leads to the conclusion that plaintiffs fail to plead sufficiently

26   a Section 10(b) claim.  *Cf. Morgan Stanley*, 542 F. Supp. 2d at 327-28.

27         Nor do plaintiffs' confidential witness ("CW") allegations salvage their Section 10(b)

28   claims.  None of the CWs purports to have had any contact with Dr. Thomson or Mr.

17

DEFENDANTS' MOTION TO DISMISS
CASE NO. C-09-05580-CW

1    McNamara; thus, they cannot speak to what either defendant knew at the time each of the

2    challenged statements was made.  *See, e.g.*, *In re Rackable Systems, Inc. Sec. Litig.*, 2010 WL

3    199703, at *8 (N.D. Cal. Jan. 13, 2010) ("The two remaining CWs . . . are not alleged 'to have

4    had any interaction . . . with any of the defendants[.]") (citation omitted).[17]  Likewise, the CWs'

5    challenges to the accuracy of certain statements (*e.g.*, ¶¶ 77-78, 82, 85, 100-01) cannot substitute

6    for contradictory ***facts*** purportedly known to Messrs. Thomson and McNamara at the time the

7    statements were made – facts that are absent in the Amended Complaint.[18]  *See, e.g.*, *VeriSign*,

8    531 F. Supp. 2d at 1207 (finding complaint "contain[ed] no specific allegations of

9    contemporaneous reports or data supporting the assertions of scienter-not a single fact showing

10   what each defendant knew, when he/she knew it, or how he/she acquired that knowledge").

11        Plaintiffs' attempt to cover up these deficiencies by alleging that the statements must

12   have been fraudulent because some transactions included in backlog subsequently were removed

13   is likewise inadequate under the Reform Act.  *Tellabs*, 551 U.S. at 320 ("strong inference"

14   requirement was designed "to ward off allegations of 'fraud by hindsight'") (citation omitted).[19]

15

16

---

17   [17] Although CW2 claims to have obtained information from "her/his superior" that, prior to
18   the IPO, unidentified individuals allegedly presented Dr. Thomson with "grossly inflated sales
     figures that were included in backlog" and Dr. Thomson, in turn, presented the figures to the
19   Board (¶ 73), such vague allegations fail to withstand the formidable pleading requirements of
     the Reform Act.  The allegations lack basic details.  What information was provided to Dr.
20   Thomson?  By whom?  When?  Why should he have questioned the information that was
     provided to him?  Rumor is not an adequate substitute for particularized facts.  *See, e.g.*, *In re*
21   *Downey Sec. Litig.*, 2009 WL 2767670, at *9 (C.D. Cal. Aug. 21, 2009) ("[T]he statements of
     a [CW] are disregarded if lacking in specificity or based on hearsay, rumor, or speculation.").

22   [18] Unlike the plaintiffs in *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982 (9th Cir.
23   2008), plaintiffs here fail to plead particularized facts demonstrating that Dr. Thomson and Mr.
     McNamara knew facts that refuted the challenged statements regarding backlog.  *See id.* at 987-
24   88 & n.5 (citing detailed confidential witness reports giving rise to a strong inference that the
     defendants were aware of stop-work orders affecting Applied Signal's largest contracts and that
25   the defendants continued to count the stopped work as backlog).

26   [19] Plaintiffs also fail to allege sufficiently the other elements of a Section 10(b) claim, but
     because their failure to plead a strong inference of scienter is fatal to the claim, Defendants do
27   not address those other elements here.  In addition, many of the challenged statements are
     forward-looking and immunized from liability under the Reform Act's Safe Harbor.  15 U.S.C.
28   § 78u-5(c)(1)(A); *e.g.*, ¶¶ 64-67, 69-70, 72, 78, 80-88, 91, 96, 98-99, 105-06, 111, 118.

DEFENDANTS' MOTION TO DISMISS
CASE NO. C-09-05580-CW

1          **2.     The Section 20(a) Claims Should Be Dismissed (Counts III and IV)**

2          Plaintiffs' attempt to state a claim for control person liability against several of the

3   outside directors also fails.  As explained *supra* at 14, this claim requires both a primary

4   violation and an exercise of "actual power or control over the primary violator."  *Howard*, 228

5   F.3d at 1065.  Plaintiffs meet neither requirement.  *See supra* at 14.  Plaintiffs' attempt to plead

6   control based solely on the fact that Messrs. Wu, Yu, and Weiss, and Ms. Dávila were directors

7   and Audit Committee members is unavailing.  *See supra* at 9-10, 14; *see also Downey*, 2009 WL

8   2767670, at *16 ("boilerplate allegations" of defendants' positions at company insufficient to

9   state a claim for control person liability).  The allegations regarding Mr. Wareham, who did not

10  serve on any committees, are even more generalized and thus also fail.

11         **B.     The State Law Claims Should Be Dismissed**

12         Under Delaware law, directors and officers are protected in carrying out their duties by,

13  among other things, the business judgment rule and statutory limitations on liability.  *See, e.g.*,

14  *Citigroup*, 964 A.2d at 125.[20]  The business judgment rule is a powerful "presumption that in

15  making a business decision the directors of a corporation acted on an informed basis, in good

16  faith and in the honest belief that the action taken was in the best interests of the company."

17  *Aronson*, 473 A.2d at 812.  Plaintiffs bear the burden of rebutting this presumption.  In addition,

18  where, as here, there is an exculpatory provision in the certificate of incorporation, directors may

19  only be liable for intentional misconduct or bad faith; claims for negligent breaches of the duty

20  of care are "precluded."  *See Sagent*, 278 F. Supp. 2d at 1095 n.9; *supra* at 7.

21         With respect to the claims that sound in fraud (Counts V-IX, XI-XII), plaintiffs also must

22  satisfy the requirements of Rule 9(b).  *Vess v. Ciba-Giegy Corp. USA*, 317 F.3d 1097, 1103-04

23  (9th Cir. 2003).  Plaintiffs' allegations are insufficient to satisfy Rule 8, much less Rule 9(b).[21]

24  ─────────────────

25         [20] Because Accuray is a Delaware corporation (¶ 30), Delaware law applies to all but one of
the state law claims.  *See VeriSign*, 531 F. Supp. 2d at 1214; *Sagent*, 278 F. Supp. 2d at 1086-87.

26         [21] Because plaintiffs fail to allege a primary claim against any of the defendants, the "aiding
27  and abetting" allegations (*e.g.*, ¶¶ 59, 135) also fail.  *See Malpiede v. Townson*, 780 A.2d 1075,
1096-97 (Del. 2001) (plaintiffs must establish both a "breach of the fiduciary's duty" and a
28  "knowing participation in that breach by the defendants") (citation omitted).

1              **1.      The Breach of Fiduciary Duty Claims Relating to the Dissemination of**
                         **Allegedly False Statements Should Be Dismissed (Counts VI & VII)**

2

3              Breaches of the duty of due care are "predicated upon concepts of gross negligence."

4      *Aronson*, 473 A.2d at 812.  Gross negligence is "'a reckless indifference to or a deliberate

5      disregard of the whole body of stockholders' or actions which are 'without the bounds of

6      reason.'"  *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 750 (Del. Ch. 2005) (citations

7      omitted), *aff'd*, 906 A.2d 27 (Del. 2006); *see id*. (noting that "duty of care violations are rarely

8      found").  To establish a breach of the duty of loyalty, a plaintiff must plead facts demonstrating

9      that the defendant placed his own interests ahead of those of the company and its shareholders,

10     or failed to act in good faith.  *See Stone*, 911 A.2d at 370.  An alleged failure to act in "good

11     faith," which is a "subsidiary element" of the duty of loyalty, includes conduct where:

12             the fiduciary intentionally acts with a purpose other than that of advancing the
               best interests of the corporation . . . acts with the intent to violate applicable
13             positive law, or . . . intentionally fails to act in the face of a known duty to act.

14     *Id*. at 369-70 (citation omitted).  As explained below, plaintiffs fail to plead facts

15     demonstrating that any of the Defendants breached their fiduciary duties.

16             ***Messrs. Thomson & McNamara* (Count VI).**  Plaintiffs' breach of fiduciary duty claim

17     is premised on the same alleged misrepresentations as the Section 10(b) claims and suffers from

18     the same lack of specificity.  *See Vess*, 317 F.3d at 1103-04, 1106 (Rule 9(b) requires

19     particularized facts detailing the "who, what, when, where and how") (citation omitted).[22]

20     Although plaintiffs contend that the actions of Messrs. Thomson and McNamara "meet the lower

21     standard of 'gross negligence'" (¶ 15 n.1), the standard for gross negligence under Delaware law

22     is "stringent" and not readily satisfied.  *See, e.g.*, *In re Lear Corp. S'holder Litig.*, 967 A.2d 640,

23     652 (Del. Ch. 2008); *supra* at 20.  Plaintiffs have failed to plead sufficiently gross negligence

24     here.  Absent in the Amended Complaint are the requisite particularized facts showing that

25     Messrs. Thomson and McNamara deliberately disregarded, or were recklessly indifferent to,

26     _____

27             [22] The rumors attributed to CW2 regarding Dr. Thomson's alleged failure to question sales
       figures (¶ 73) does not suffice to plead the requisite "who, what, when and where."  *See supra* at
28     17-18.

                                                        20                  DEFENDANTS' MOTION TO DISMISS
                                                                            CASE NO. C-09-05580-CW

1   alleged inaccuracies in the statements at the time they were made, much less that they acted

2   "outside the bounds of reason."  *See supra* at 20.

3        **The Audit Committee (Count VII).**  To state a claim against the Audit Committee

4   defendants, plaintiffs must plead more than gross negligence:  they must plead facts showing

5   intentional misconduct or bad faith.  *See supra* at 20.  Plaintiffs have not met their burden.

6   Merely relying on a director's committee membership, as plaintiffs do here, is not sufficient.

7   *Wood*, 953 A.2d at 142; *see supra* at 9-10.  Likewise, plaintiffs' reliance on the Audit Committee

8   Charter (¶ 198) is also misplaced, as plaintiffs both mischaracterize it and draw erroneous

9   conclusions regarding the Audit Committee's role.  *See supra* at 9-10.

10        Regardless, plaintiffs do not allege that any Audit Committee defendant drafted or

11   prepared the challenged statements.  *Cf. Citigroup*, 964 A.2d at 134 ("Plaintiffs do not allege

12   facts suggesting that the director defendants prepared the financial statements or that they were

13   directly responsible for the misstatements[.]").  Nor do plaintiffs allege that any of the Audit

14   Committee defendants participated in, or were involved in the preparation for, the quarterly

15   conference calls; indeed, plaintiffs' own allegations are to the contrary.  *E.g.*, ¶ 80 ("On May 1,

16   2007, Accuray held an earnings conference call, ***conducted by defendants Thomson and***

17   ***McNamara***) (emphasis added); *see also* ¶¶ 88, 99, 106, 111, 114.  Even if the Audit Committee

18   members had been involved in drafting or preparing specific statements – an assertion for which

19   there is *no* factual support – plaintiffs have failed to plead that any of the statements were made

20   with knowledge of alleged inaccuracies or in bad faith.  *Supra* at 20.   To the extent plaintiffs

21   also allege a failure of oversight or supervision, such allegations are equally deficient under

22   *Caremark* and its progeny.  *Supra* at 13-14; *Desimone*, 924 A.2d at 935 ("scienter-based

23   standard" applies to failure to monitor claims).

24        **2.    The Repurchase Claims Should Be Dismissed (Counts V and VIII)**

25        **The Director Defendants.**  Plaintiffs allege the "Director Defendants" breached their

26   fiduciary duties by "authorizing Accuray's stock repurchase plan and failing to halt the

27   Company's purchases . . . while Accuray's share price was artificially inflated[.]"  ¶ 205.

28   Plaintiffs, however, "must show that the directors acted in bad faith when they approved the

DEFENDANTS' MOTION TO DISMISS
CASE NO. C-09-05580-CW

1   stock repurchases." *In re Citigroup, Inc. S'holder Deriv. Litig*, 2009 WL 2610746, at *9

2   (S.D.N.Y. Aug. 25, 2009).  As in *Citigroup*, plaintiffs' allegations "show at most" that the stock

3   repurchases may have been "bad business decisions in light of the subsequent decline in the price

4   of [the company's] stock." *Id*.  Such allegations are insufficient. *Id*.; *supra* at 15-16.

5          ***Messrs. Thomson and McNamara.***   Plaintiffs also allege that Messrs. Thomson and

6   McNamara breached their fiduciary duties by "causing Accuray to purchase its own stock while

7   Accuray's share price was artificially inflated as a result of false and misleading statements

8   regarding the reliability of Accuray's backlog and business prospects." ¶ 187.  As explained

9   *supra* at 21, plaintiffs' claim against Dr. Thomson fails because plaintiffs fail to plead facts

10  showing that the Board's decision to authorize the share repurchase was made in bad faith. *See*

11  *also supra* at 15-16.  Plaintiffs' attempt to assert a claim against Mr. McNamara, *who was not a*

12  *member of the Board*, is equally unavailing.  Plaintiffs' own allegations reveal that the share

13  repurchase was authorized by the ***Accuray Board***. ¶ 121.  Plaintiffs plead no facts suggesting

14  that Mr. McNamara was involved in the decisions to repurchase shares. ¶¶ 121-29.

15                 **3.      The Waste Claim Should Be Dismissed (Count IX)**

16         Plaintiffs claim that Defendants wasted corporate assets by:  "(i) directing Accuray to

17  purchase over $23.9 million of its own stock at artificially inflated prices; (ii) paying bonuses

18  and . . . compensation to certain of its executive officers; (iii) paying . . . McNamara a lucrative

19  severance package despite the fact that he breached his fiduciary duties . . .; and (iv) incurring

20  potentially hundreds of millions of dollars of legal liability and/or legal costs[.]" ¶ 210.[23]  Under

21  Delaware law, "[t]he standard for a waste claim is high and the test is 'extreme . . . very rarely

22  satisfied by a shareholder plaintiff.'"  *In re 3Com Corp. S'holders Litig.*, 1999 WL 1009210, at

23  *4 (Del. Ch. Oct. 25, 1999) (citation omitted).  "'Most often the claim is associated with a

24  transfer of corporate assets that serves no corporate purpose; or for which no consideration at all

25  is received.'"  *Brehm*, 746 A.2d at 263 (citation omitted).  The Amended Complaint fails to

26

27         [23] Because plaintiffs do not allege that Mr. McNamara, as a non-Board member, made any of
    the challenged decisions, the waste claim against him must be dismissed.

28

1    satisfy this rigorous standard.

2          *First*, as explained *supra* at 15-16, plaintiffs fail to rebut the presumption that the

3    repurchases were a valid exercise of business judgment.  *Cf. In re NutriSystem, Inc. Deriv. Litig.*,

4    666 F. Supp. 2d 501, 511-13, 525 (E.D. Pa. 2009) (plaintiffs failed to plead facts suggesting that

5    repurchase decisions were not a "valid exercise of the board's business judgment").  *Second*,

6    boards of directors have broad discretion regarding compensation matters, and plaintiffs fail to

7    plead any facts showing that the compensation was devoid of a legitimate corporate purpose.

8    *Brehm*, 746 A.2d at 263; *see also supra* at 10-11.  *Third*, plaintiffs fail to plead facts suggesting

9    that the challenged severance package – which was dictated by Mr. McNamara's employment

10   agreement – was an "unconscionable" waste of corporate assets.  *Supra* at 11.  *Finally*,

11   allegations that Accuray may "incur[] ***potentially*** hundreds of millions of dollars in legal liability

12   and/or legal costs" (¶ 210 (emphasis added)) are too speculative to plead a claim for waste.  *See,*

13   *e.g.*, *In re United Telecomms., Inc. Sec. Litig.*, 1993 WL 100202, at *2 (D. Kan. Mar. 4, 1993)

14   (dismissing derivative complaint where plaintiff alleged that company had been damaged by

15   being named in securities class action).

16          **4.      The Unjust Enrichment Claim Should Be Dismissed (Count X)**

17          "Unjust enrichment is defined as 'the unjust retention of a benefit to the loss of another,

18   or the retention of money or property of another against the fundamental principles of justice or

19   equity and good conscience.'"  *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062

20   (Del. 1988) (citation omitted).  Plaintiffs assert that the "Individual Defendants were unjustly

21   enriched as a result of the compensation and director remuneration they received while breaching

22   fiduciary duties owed to Accuray."  ¶ 215.  Merely alleging the amount of compensation or

23   remuneration does not plead a claim for unjust enrichment.  Plaintiffs fail to explain – as they

24   must – how the alleged remuneration was unjust, and to the detriment of Accuray.  *See Fleer*,

25   539 A.2d at 1062 ("Before the court may properly order restitution, it must find that the

26   defendant was unjustly enriched *at the expense of the plaintiff.*") (emphasis added).

27          **5.      The New Claims for Insider Trading Also Fail (Counts XI-XII)**

28          Notably, five Defendants are not alleged to have sold *any* stock, and the only sales

23

1   plaintiffs challenge by the other Defendants were in the IPO.  ¶¶ 219, 223.[24]   Plaintiffs' attempt

2   to allege improper insider trading is thus belied by their own allegations.

3               a.        **The Allegations Fail under Delaware Law (Count XII)**

4          To plead a claim for insider trading under Delaware law, plaintiffs must allege that the

5   defendant "possessed material, nonpublic company information" and "used that information

6   improperly by making trades because she was motivated, in whole or in part, by the substance of

7   that information." *In re Oracle Corp., Deriv. Litig*., 867 A.2d 904, 934 (Del. Ch. 2004), *aff'd*

8   *mem.*, 872 A.2d 960 (Del. 2005).  Plaintiffs assert that Messrs. Thomson, Adler, Tu, and Wu sold

9   Accuray stock with knowledge that the reported backlog in the Registration Statement included

10  risky, contingent contracts and thus was an "inaccurate measurement of the Company's financial

11  condition[.]"  ¶¶ 223-24.  Conclusory allegations of group knowledge such as those asserted

12  here, however, do not suffice.  *Cf. Guttman*, 823 A.2d at 503 (rejecting allegation that defendants

13  knew statements were false where plaintiff failed to allege sufficient supporting details).

14  Plaintiffs fail to plead a single fact concerning what Messrs. Thomson, Adler, Tu or Wu did or

15  did not know about the contracts included in the reported backlog in the Registration Statement,

16  much less identifying the specific information that purportedly motivated them to sell shares in

17  the IPO.  Moreover, plaintiffs fail to explain why three **outside directors** (Messrs. Adler, Tu and

18  Wu) would have had knowledge regarding any such contracts.  In any event, the fact that officers

19  and directors sold shares in the IPO is far from unusual or suspicious.  *See supra* at 11-13.

20  Plaintiffs' unsupported allegations fall far short of pleading an insider selling claim under

21  Delaware law.

22               b.        **The Section 25402 Claim also Fails (Count XI)**

23         Plaintiffs also assert a separate claim under California Corporations Code Section 25402,

24  which makes it unlawful for a corporate insider to trade when s/he knows material nonpublic

25  ─────────────────

26  [24] Plaintiffs' contention that "Adler, Thomson, Tu, and Wu sold nearly 40% of the total
    amount of shares sold during the IPO," thereby "depriv[ing] the Company of $113,597,964 in

27  potential revenue from the IPO" (¶ 9), is demonstrably false.  In fact, $105 million of the alleged
    sales - more than 90% of the total figure - were made by non-defendant President (BVI)

28  International Investment Holdings Ltd, and not personally by Mr. Tu as alleged (¶ 8).  Ex. I.

DEFENDANTS' MOTION TO DISMISS
                                                                                                     CASE NO. C-09-05580-CW

1  information about the issuer.  The claim is both untimely and factually deficient.

2        A Section 25402 claim must be brought within five years from the act or two years from

3  the discovery of facts constituting the violation, whichever expires first.  Cal. Corp. Code

4  § 25506(b).  The challenged stock sales were in the February 2007 IPO, and plaintiffs allege that

5  the "truth" regarding the alleged misrepresentations began to "come[] to light" with the issuance

6  of the January 30, 2008 press release.  Amended Complaint at 43 & ¶¶ 105-110.  Accordingly,

7  the two-year period expired on January 30, 2010, and the Section 25402 claim is time-barred.

8        In any event, plaintiffs also fail to plead sufficient facts to support a Section 25402 claim.

9  Section 25502.5 permits companies to recover damages from officers and directors for *knowing*

10  violations of Section 24502.  *See* Cal. Corp. Code § 25502.5(a), (c).  Plaintiffs cannot impute

11  knowledge of allegedly material non-public information to the selling Defendants as a group.

12  *E.g.*, ¶¶ 219-220.  Rather, plaintiffs must plead facts identifying the specific information that

13  purportedly motivated each individual to engage in insider trading.  1 Harold Marsh, Jr. &

14  Robert H. Volk, *Practice Under California Securities Laws* § 14.04[3][c] (rev. ed. 2004)

15  ("imputed knowledge" is not enough to violate Section 25402; it "require[s] actual knowledge on

16  the part of the defendant").  As explained *supra* at 11-12, 24, plaintiffs fail to plead the requisite

17  particularized details.  *See, e.g.*, *VeriSign*, 531 F. Supp. 2d at 1221 (noting plaintiffs' failure to

18  "explain which 'true adverse facts' each of the selling defendants knew, when each knew those

19  facts, how they acquired the knowledge").  Plaintiffs' Section 25402 claim should be dismissed.

20                              **CONCLUSION**

21        For the foregoing reasons, Defendants respectfully request that the Amended Complaint

22  be dismissed.

23  Dated:  May 10, 2010                    WILSON SONSINI GOODRICH & ROSATI
                                            Professional Corporation
24
                                            By:  /s/Ignacio E. Salceda
25                                                Ignacio E. Salceda

26                                          Attorneys for Defendants Euan S. Thomson,
                                            Wayne Wu, Li Yu, Robert S. Weiss, Elizabeth
27                                          Dávila, John P. Wareham, Robert McNamara,
                                            John R. Adler, Jr. and Nominal Defendant
28                                          Accuray Incorporated

DEFENDANTS' MOTION TO DISMISS
                                            CASE NO. C-09-05580-CW