ROBBINS UMEDA LLP
MARC M. UMEDA (197847)
mumeda@robbinsumeda.com
KEVIN A. SEELY (199982)
kseely@robbinsumeda.com
KELLY M. MCINTYRE (212360)
kmcintyre@robbinsumeda.com
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile:  (619) 525-3991

JOHNSON BOTTINI, LLP
FRANK J. JOHNSON (174882)
frankj@johnsonbottini.com
FRANCIS A. BOTTINI, JR. (175783)
frankb@johnsonbottini.com
KEITH M. COCHRAN (254346)
keithc@johnsonbottini.com
501 West Broadway, Suite 1720
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile:  (619) 238-0622

KENDALL LAW GROUP, LLP
JOE KENDALL
jkendall@kendalllawgroup.com
JAMIE J. MCKEY
jmckey@kendalllawgroup.com
3232 McKinney, Suite. 700
Dallas, TX 75204
Telephone: (214) 744-3000
Facsimile:  (214) 744-3015

*Co-Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| IN RE ACCURAY, INC. SHAREHOLDER DERIVATIVE LITIGATION <br><br> This Document Relates To: <br><br> ALL ACTIONS | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Lead Case No.   C 09 05580 CW <br><br> NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR APPROVAL OF SHAREHOLDER DERIVATIVE SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br><br> Date: May 5, 2011 <br> Time: 2:00 p.m. <br> Courtroom: 2, 4th Floor, Hon. Claudia Wilken |

NOT. OF UNOPP. MOT. & UNOPP. MOT. FOR APPROVAL OF S'HOLDER DERIVATIVE SETTLEMENT & AWARD OF ATTYS' FEES & MEMO. OF PS & AS IN SUPPORT, LEAD CASE NO. C 09 05580 CW

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................................ iii

I.     STATEMENT OF ISSUES TO BE DECIDED ..................................................................1

II.    INTRODUCTION ...............................................................................................................2

III.   BACKGROUND OF THE DERIVATIVE LITIGATION ..................................................3

IV.    THE SETTLEMENT TERMS.............................................................................................6

V.     THE STANDARDS FOR JUDICIAL APPROVAL OF THE DERIVATIVE
       SETTLEMENT....................................................................................................................8

VI.    THE SETTLEMENT SHOULD BE APPROVED..............................................................10

       A.    The Settlement Is the Product of Good Faith Negotiations at Arm's-Length........10

       B.    The Risks of Establishing Liability and Damages..................................................11

             1.    Liability.......................................................................................................11

             2.    Damages.......................................................................................................11

             3.    The Expense, Complexity, and Duration of Continued Litigation ............12

       C.    Risk of Maintaining the Action..............................................................................13

       D.    The Extent of Discovery and Stage of the Proceedings.........................................13

       E.    The Experience and Views of Counsel Favor Approval ........................................14

VII.   THE NEGOTIATED FEE AND EXPENSE AWARD SHOULD BE
       APPROVED .......................................................................................................................15

       A.    Approval of the Negotiated Fee and Expense Award is Warranted Under
             the "Substantial Benefit Doctrine".........................................................................15

       B.    The Agreed-Upon Fee and Expense Award Is Fair and Reasonable Under
             the Applicable *Johnson* Factors............................................................................16

             1.    The Time and Labor Required.....................................................................17

             2.    The Novelty and Difficulty of the Issues....................................................17

             3.    The Skill Required and the Experience, Reputation, and Ability of
                   Counsel .......................................................................................................18

- i -

4.      Preclusion of Other Employment................................................................18

5.      Whether the Fee Is Fixed or Contingent.....................................................18

6.      Awards in Similar Cases..............................................................................19

VIII.    THE SERVICE AWARDS SHOULD BE APPROVED ...................................................19

IX.      CONCLUSION...............................................................................................................20

NOT. OF UNOPP. MOT. & UNOPP. MOT. FOR APPROVAL OF S'HOLDER DERIVATIVE SETTLEMENT &
AWARD OF ATTYS' FEES & MEMO. OF PS & AS IN SUPPORT, LEAD CASE NO. C 09 05580 CW

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bacas v. Way*,
No. 4:07-cv-456, 2008 WL 746825 (S.D. Tex. Mar. 20, 2008) ...................................... 19

*Blanchard v. Bergeron*,
489 U.S. 87 (1987) .......................................................................................................... 16

*Brantley v. Surles*,
804 F.2d 321 (5th Cir. 1986) .......................................................................................... 17

*Clark v. Lomas & Nettleton Fin. Corp.*,
79 F.R.D. 641 (N.D. Tex. 1978),
*vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980) .................................................. 17

*Cohn v. Nelson*,
375 F. Supp. 2d 844 (E.D. Mo. 2005) ......................................................................... 8, 13

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ............................................................................................... 9

*Durkin v. Shea & Gold*,
92 F.3d 1510 (9th Cir. 1996) ........................................................................................... 9

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980),
*aff'd*, 661 F.2d 939 (9th Cir. 1981) ................................................................................... 9

*Fricke v. Daylin, Inc.*,
66 F.R.D. 90 (E.D.N.Y. 1975) .......................................................................................... 9

*Girsh v. Jepson*,
521 F.2d 153 (3rd Cir. 1975) ....................................................................................... 9, 11

*Granada Invs., Inc. v. DWG Corp.*,
962 F.2d 1203 (6th Cir. 1992) ........................................................................................ 19

*Helfand v. New Am. Fund, Inc.*,
64 F.R.D. 86 (E.D. Pa. 1974) ........................................................................................... 9

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ....................................................................................................... 15

*In re AOL Time Warner S'holder Derivative Litig.*,
No. 02 Civ. 6302 (SWK), 2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) .......................... 9

NOT. OF UNOPP. MOT. & UNOPP. MOT. FOR APPROVAL OF S'HOLDER DERIVATIVE SETTLEMENT &
AWARD OF ATTYS' FEES & MEMO. OF PS & AS IN SUPPORT, LEAD CASE NO. C 09 05580 CW

*In re Catfish Antitrust Litig.*,
    939 F. Supp. 493 (N.D. Miss. 1996) ................................................................................. 17

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3rd Cir. 2001) .......................................................................................... 14

*In re Consol. Pinnacle W. Sec. Litig./Resolution Trust Corp.-Merabank Litig.*,
    51 F.3d 194 (9th Cir. 1995) ............................................................................................ 10

*In re Emerging Commc'ns S'holders Litig.*,
    No. 16415, 2004 WL 1305745 (Del. Ch. May 3, 2004) .................................................. 12

*In re Imperial Corp. of Am.*,
    92 F.3d 1503 (9th Cir. 1996) ............................................................................................ 9

*In re Jiffy Lube Sec. Litig.*,
    927 F.2d 155 (4th Cir. 1991) .......................................................................................... 10

*In re Lloyd's Am. Trust Fund Litig.*,
    No. 96 Civ. 1262 (RWS), 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ...................... 12

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    205 F.R.D. 369 (D.D.C. 2002) ......................................................................................... 20

*In re McKesson HBOC, Inc. ERISA Litig.*,
    391 F. Supp. 2d 844 (N.D. Cal. 2005) ............................................................................. 20

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .......................................................................................... 11

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .............................................................................. 8, 9, 11, 13

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .................................................................................... 12

*In re PayPal Litig.*,
    No. C-02-1227-JF PVT, 2004 WL 2445244 (N.D. Cal. Oct. 13, 2004) .......................... 20

*In re UnitedHealth Group Inc. S'holder Derivative Litig.*,
    631 F. Supp. 2d 1151 (D. Minn. 2009) ........................................................................... 19

*In re Xoma Corp. Sec. Litig.*,
    No. C-91-2252 TEH, 1992 U.S. Dist. LEXIS 10502 (N.D. Cal. July 14, 1992) ............... 8

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ............................................................................ 16, 18, 19

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) ............................................................................................ 16

- iv -

*Lewis v. Anderson*,
81 F.R.D. 436 (S.D.N.Y. 1978) ..................................................................................... 9

*Lewis v. Chapman*,
416 F. Supp. 855 (S.D.N.Y. 1976)................................................................................ 9

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) ........................................................................................ 8

*Marcus v. Putnam*,
60 F.R.D. 441 (D. Mass. 1973)..................................................................................... 9

*Mathes v. Roberts*,
85 F.R.D. 710 (S.D.N.Y. 1980) .................................................................................... 9

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970)..................................................................................................... 16

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
688 F.2d 615 (9th Cir. 1982) .................................................................................*passim*

*Ross v. Bernhard*,
396 U.S. 531 (1970)..................................................................................................... 17

*Simon v. Toshiba Am.*,
No. 07-06292, 2010 WL 1757956 (N.D. Cal. Apr. 30, 2010).......................................... 20

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) .......................................................................................... 9

*Unite Nat'l Ret. Fund v. Watts*,
No. 04-CV-3603 (DMC), 2005 WL 2877899 (D.N.J. Oct. 28, 2005)....................... 16, 19

*United States v. McInnes*,
556 F.2d 436 (9th Cir. 1977) ........................................................................................ 8

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ................................................................................. 16, 17

*Wallack v. Davis*,
No. 73 Civ. 4976 (LFM), 1974 WL 420 (S.D.N.Y. June 27, 1974).................................. 9

*Williams v. First Nat'l Bank*,
216 U.S. 582 (1910)....................................................................................................... 8

**RULES, STATUTES, AND OTHER AUTHORITIES**

Fed. R. Civ. P.
Rule 23.1(c)....................................................................................................................8

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on May 5, 2011, at 2:00 p.m., or as soon thereafter as the matter may be heard, plaintiffs Thomas Beebe ("Beebe"), Christopher Borrelli ("Borrelli"), Sanjay Israni ("Israni"), and Eric Bachinski ("Bachinski") (collectively "Plaintiffs"), both individually and derivatively on behalf of nominal defendant Accuray Incorporated ("Accuray" or the "Company") will move the Honorable Claudia Wilken, U.S. District Judge, at the U.S. District Court, Northern District of California, Oakland Courthouse, Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, California 94612, to grant approval of: (i) the proposed Settlement of the above-entitled action on the terms set forth in the Stipulation of Settlement dated March 11, 2011 (the "Stipulation" or "Settlement"); (ii) the negotiated attorneys' fees and expenses provision in the amount of $800,000; and (iii) the service awards for Plaintiffs in the amount of $1,000 each (the "Motion").

The Settlement resolves the shareholder derivative claims brought on behalf of Accuray now remanded to this Court (the "Federal Derivative Action"), as well as the Appeal[1] and the claims of the Demand.  Subject to this Court's approval of the Settlement, the Federal Derivative Action will be voluntarily dismissed with prejudice, subject to the terms and conditions of the Stipulation.

The Motion is based on the accompanying Memorandum of Points and Authorities in Support of Unopposed Motion for Approval of Shareholder Derivative Settlement and Award of Attorneys' Fees and Reimbursement of Expenses ("Memorandum"); the Stipulation; the Joint Declaration of Kelly M. McIntyre and Frank J. Johnson ("Joint Decl."); and such additional evidence or argument as may be required by the Court.

## I.    STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should approve: (i) the Settlement reached between the parties after extensive, arm's-length negotiations; (ii) the negotiated attorneys' fees and expenses provision in the

---

[1] All capitalized terms that are not otherwise defined herein shall have the same meanings and/or definitions as set forth in the Stipulation dated March 11, 2011 and filed concurrently herewith, unless otherwise noted.

- 1 -

amount of $800,000 which was agreed upon in recognition of the material benefits conferred upon the Company; and (iii) the service awards for Plaintiffs in the amount of $1,000 each.

## II.    INTRODUCTION

This Memorandum is submitted in support of approval of the Settlement of the shareholder derivative claims brought on behalf of Accuray against certain of its current and/or former directors and top officers for allegedly wrongfully touting Accuray's CyberKnife sales backlog as the key metric for determining the Company's profitability. Plaintiffs alleged that certain officers and directors knew that the backlog definition had been altered to include contingent contracts that had little to no likelihood of becoming actual revenue, yet they allegedly continued to make, or allowed others to make, knowingly misleading statements about CyberKnife's current growth prospects and revenue streams based on the misleading revised backlog definition. More specifically, Plaintiffs alleged that certain officers and directors' wrongful conduct continued for approximately twenty months, and that the Company was forced to write down $127 million in just three quarters.

Plaintiffs also alleged that certain officers and directors breached their fiduciary duties and committed corporate waste by authorizing and causing Accuray to purchase $25 million of its own stock at artificially inflated prices. Plaintiffs further alleged that certain officers and directors breached their fiduciary duty by engaging in insider trading, selling millions of shares of Accuray stock at artificially inflated prices due to the allegedly false and misleading statements.

The Settlement represents an outstanding result for Accuray and its stockholders. It was achieved only after months of arm's-length negotiations between the parties to the Federal Derivative Action, the Appeal, and the Demand and each of their respective counsel and participation in the Ninth Circuit Mediation Program with the assistance of Circuit Mediator Roxane G. Ashe. As a result of Plaintiffs' efforts in the filing, prosecution, and settlement of the Federal Derivative Action, the Appeal, and the Demand, Accuray will adopt and implement, and continue to implement or observe, the Corporate Governance Measures described in the Stipulation that will materially benefit Accuray and its shareholders. *See* Stipulation, ¶¶2.1-2.2.

In recognition of the material benefits conferred upon the Company as a result of the Settlement, Accuray has agreed that Plaintiffs'-Appellants' Counsel and Demand Shareholder's

- 2 -

Counsel be paid the agreed-upon amount of $800,000 (the "Fee and Expense Award") for their attorneys' fees and reimbursement of expenses. *See* Stipulation, ¶¶4.1-4.2.

In light of their efforts in connection with obtaining the material benefits conferred upon Accuray as a result of the Settlement, Plaintiffs also request court approval of modest service awards in the amount of $1,000 each to be paid out of the Fee and Expense Award. Stipulation, ¶4. As detailed in their declarations, without Plaintiffs' participation, Accuray would not have received the substantial benefits. *See* Declarations of Beebe, Bachinski, Borrelli, and Israni, attached as Exs. D-G, respectively, to the Joint Decl.

In sum, the Settlement represents an outstanding resolution for Accuray in a case of substantial complexity and costs. Accordingly, Plaintiffs respectfully submit that the Settlement, including the negotiated Fee and Expense Award and the service awards, should be approved.

## III.    BACKGROUND OF THE DERIVATIVE LITIGATION

Co-Lead Counsel for Lead Plaintiffs (defined below) invested a great amount of resources and effort to achieve the implementation, amendment, and continued maintenance of the Corporate Governance Measures, which will materially benefit Accuray and its shareholders. By way of background, in July 2009, the first of several securities fraud class action complaints asserting claims relating to Accuray's backlog was filed in the U.S. District Court for the Northern District of California (the "Court") against Accuray and several of the Individual Defendants. These actions were subsequently consolidated into one action: the Federal Class Action.

Shortly after the initial complaints were filed in the Federal Class Action, shareholder derivative complaints on behalf of Accuray were filed in state and federal court. On August 5, 2009, plaintiff Israni filed a complaint in the Superior Court of the State of California in the County of Santa Clara (the "*Israni* State Action"). On November 24, 2009, plaintiff Beebe filed a complaint in this Court. On November 30, 2009 and December 1, 2009, plaintiffs Bachinski and Borrelli, respectively, also filed complaints in this Court.

On December 23, 2009, the Court consolidated the three federal derivative actions into the instant Federal Derivative Action, captioned *In re Accuray, Inc. Derivative Litigation*, Lead Case No. C-09-05880. In addition, the Court's December 23, 2009 Order appointed Beebe, Bachinski and

- 3 -

Borrelli as Lead Plaintiffs and Robbins Umeda, LLP, Johnson Bottini, LLP, and Kendall Law Group, LLP as Co-Lead Counsel for Lead Plaintiffs.

Co-Lead Counsel for Lead Plaintiffs worked cooperatively to analyze the claims asserted in their clients' respective complaints. After conducting further research and analysis of the publicly available information, on December 23, 2009, Lead Plaintiffs Beebe, Bachinski, and Borrelli filed a Consolidated Verified Shareholder Derivative Complaint.

On February 5, 2010, Accuray and the Individual Defendants filed a motion for a limited stay of proceedings and also moved to dismiss the Consolidated Verified Shareholder Derivative Complaint.

In the interest of preserving judicial and party resources and working together for the benefit of the Company, Co-Lead Counsel for Lead Plaintiffs also coordinated with counsel for Israni in the *Israni* State Action. All counsel agreed that it was in the Company's best interest to work cooperatively. Thus, on February 25, 2010, plaintiff Israni filed an *ex parte* application with the Santa Clara County Superior Court to stay the *Israni* State Action in favor of the Federal Derivative Action. Defendants opposed Israni's *ex parte* application, and Israni's *ex parte* application was denied.

Israni agreed that it was in the Company's best interest to have one forum decide the issues, that it was in the parties' best interest to avoid conflicting rulings, and that working with cooperatively with Co-Lead Counsel for Lead Plaintiffs would preserve party and judicial resources. Thus, on February 25, 2010, Israni filed a Request for Dismissal of the *Israni* State Action in Santa Clara County Superior Court, and on March 16, 2010, Israni filed a verified shareholder derivative complaint in this Court, captioned *Israni v. Thomson, et al.*, No. C-10-01117 (CW) (the "*Israni* Federal Action"). On March 25, 2010, the Court consolidated the *Israni* Federal Action into the Federal Derivative Action.

With the passage of more time, Co-Lead Counsel for Lead Plaintiffs invested additional time and resources to conduct additional research and factual analysis of the claims pending before the Court. Co-Lead Counsel for Lead Plaintiffs also analyzed the motion to dismiss that was pending before the Court. With this additional research and analysis in hand, on April 8, 2010, Plaintiffs

- 4 -

filed the Verified Amended Consolidated Shareholder Derivative Complaint (the "Complaint") naming as Defendants Euan S. Thomson, Robert E. McNamara, Wayne Wu, Li Yu, Robert S. Weiss, Elizabeth Dávila, John Wareham, Ted Tu, John R. Adler, Jr., and nominal defendant Accuray.[2]

On May 10, 2010, Accuray and the Individual Defendants filed another motion to dismiss the Complaint.  The Court heard oral argument on the Defendants' motion to dismiss on August 12, 2010, and on August 31, 2010, the Court granted Defendants' motion with leave to amend.  On September 27, 2010, Plaintiffs filed a notice of their intent not to file an amended complaint.  On October 6, 2010, the Court dismissed the Federal Derivative Action and entered judgment.  Plaintiffs Beebe, Borrelli, and Israni then filed a notice of appeal (the "Appeal") on November 8, 2010 with the U.S. Court of Appeals for the Ninth Circuit.

On December 1, 2010, plaintiff Bachinski, who was not part of the Appeal, separately served a letter on Accuray pursuant to Delaware Court of Chancery Rule 23.1 (the "Demand") identifying several factual issues and demanding that the Board of Directors whether certain officers and directors breached their fiduciary duties and committed corporate waste by authorizing and causing Accuray to purchase $25 million of its own stock at artificially inflated prices.

Over the next several months, the parties to the Federal Derivative Action, the Appeal, and the Demand and each of their respective counsel engaged in extensive, arm's-length negotiations concerning a possible settlement of the Federal Derivative Action, the Appeal, and the Demand.  The parties also participated in the Ninth Circuit Mediation Program with the assistance of Circuit Mediator Roxane G. Ashe.  As a result of these negotiations, the Settling Parties reached an agreement to settle the Federal Derivative Action, the Appeal, and the Demand upon the terms and subject to the conditions set forth in the Stipulation.

---

[2] Although a summons was issued to Mr. Tu, he has never been served in the Federal Derivative Action.

- 5 -

## IV.　　THE SETTLEMENT TERMS

As a result of the filing, prosecution, and settlement of the Federal Derivative Action, the Appeal, and the Demand, the Company will adopt and implement and continue to implement or observe the Corporate Governance Measures described below. The Corporate Governance Measures constitute consideration for the Stipulation, and Accuray acknowledges that Plaintiffs' Actions were a substantial contributing cause in the implementation, amendment, and continued maintenance of the Corporate Governance Measures, which will substantially benefit Accuray and its shareholders.

Within thirty (30) business days of the Effective Date, the following agreed-upon Corporate Governance Measures shall be implemented and continue to be observed by the Company, and shall remain in effect until the earlier of: (i) three (3) years from the Effective Date or (ii) the consummation of a change in control of Accuray. However, if any of the Corporate Governance Measures should conflict with any applicable law(s) or any applicable rule(s) of any national securities exchange or interdealer quotation system, the Company will comply with such applicable law(s) or rule(s) notwithstanding the provisions of the Stipulation or any orders implementing the Settlement:

### *(a)　　Compensation*

#### (i)　　Stock Ownership Guidelines

Accuray has implemented and will continue to observe stock ownership guidelines for non-employee directors and executive officers.

#### (ii)　　Recoupment ("Clawback") Policy.

The Company will revise its Clawback Policy to apply also to compensation based on materially reduced backlog figures. In the event that the Company is required to materially reduce its publicly-disclosed backlog figures, the Board will review the conduct of executive officers in relation to the determination and publication of backlog figures and their subsequent material reduction. By "reduction," this policy is intended to relate to system sales which are included in publicly-disclosed backlog but are then removed due to the transaction being cancelled. Removals from backlog due to the fact that a system sale shipped and was recognized as revenue or where a system is removed from backlog due to it being in backlog longer than the time provided for by the

- 6 -

Company's backlog criteria do not count as a "reduction."  "Material Reduction" shall mean a reduction of at least 15% of the total backlog publicly reported by the Company in the preceding quarter.

If the Board determines that an executive officer has engaged in knowing or reckless misconduct, or otherwise violated the Company's Code of Conduct and Ethics for Employees, Agents and Contractors, and that such misconduct or violation led to the improper inclusion of a proposed system sale in publicly-disclosed backlog, then the Board may, in its discretion, take appropriate action to remedy the misconduct or violation, including, without limitation, seeking reimbursement of any portion of any performance-based or incentive compensation paid or awarded to the executive officer that is greater than would have been paid or awarded if calculated based on the materially reduced backlog figures, to the extent not prohibited by governing law.

The revised Clawback Policy shall be based on the Company's current backlog criteria and policies as of the date set forth in the first paragraph of the Stipulation.  If the nature of the Company's business changes thereafter, for example, as a result of a strategic transaction or business combination, the Board will consider making appropriate modifications to the Clawback Policy that account for such changes without altering the policy's underlying objectives.  Should rulemaking by the SEC pursuant to the Dodd-Frank Act require a modification of this Clawback Policy, the Company will comply with such applicable rules notwithstanding the provisions of the Stipulation.

### (b)     *Disclosure Committee*

The Disclosure Committee's duties and responsibilities shall be modified, and the Disclosure Committee shall adopt the Disclosure Committee Charter attached as Addendum 1 to this Stipulation.  Further, the Company shall post the new Disclosure Committee Charter on the Company's website for public review.

Accuray agrees to use its best efforts to ensure that any potential settlement of the Federal Class Action, if a settlement were to occur, will be funded by directors and officers ("D&O") liability insurance, to the extent applicable.  Accuray further agrees that it will only use Company funds if such use is approved by the Company's independent directors.

- 7 -

## V.    THE STANDARDS FOR JUDICIAL APPROVAL OF THE DERIVATIVE SETTLEMENT

It is well-settled that compromises of disputed claims are favored by the courts. *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *see also Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 635 (9th Cir. 1982) (recognizing that the "settlement process [is] favored in the law"); *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977) (explaining that "there is an overriding public interest in settling and quieting litigation"). Further, "[s]ettlements of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable.'" *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (citation omitted). *See also In re Xoma Corp. Sec. Litig.*, No. C-91-2252 TEH, 1992 U.S. Dist. LEXIS 10502, at *3-*4 (N.D. Cal. July 14, 1992) ("The law favors settlement of cases and quieting of litigation, particularly in complex class actions and derivative litigation.").

Under Rule 23.1, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23.1(c). The Court's function is to determine whether the settlement, as a whole, "is fair, reasonable, and adequate" to those on whose behalf the action is brought. *See, e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377-78 (9th Cir. 1995) (on appeal of simultaneous derivative and securities class actions settlements, the court upheld the district court's determination that the proposed settlement for the shareholder derivative suit was "'fair, reasonable and adequate to [the company]'"); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005) (finding that the settlement of a shareholder derivative action was "fair, reasonable, and in the best interests" of the company and its shareholders because it provided, in part, long-lasting corporate governance reforms).

In *Officers for Justice*, 688 F.2d 615, the Ninth Circuit set forth the factors which should be considered in evaluating the fairness of a class action settlement, certain of which are applicable to a derivative settlement:

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the

- 8 -

proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 625; *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.[3]

The district court must exercise "sound discretion" in evaluating a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375. However, in exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625; *see also In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302 (SWK), 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006) (noting that a "'mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure'") (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)).

---

[3] Federal courts in this circuit and others have universally applied the factors enumerated in *Officers* in the context of shareholder derivative settlements. *See Pac. Enters.*, 47 F.3d at 377; *Durkin v. Shea & Gold*, 92 F.3d 1510, 1512 n.6 (9th Cir. 1996); *In re Imperial Corp. of Am.*, 92 F.3d 1503, 1506 n.5 (9th Cir. 1996); *see also Mathes v. Roberts*, 85 F.R.D. 710, 714 (S.D.N.Y. 1980) (strength of case versus settlement offer); *Lewis v. Anderson*, 81 F.R.D. 436, 438-39, 441-42 (S.D.N.Y. 1978) (strength of case; avoidance of further expense; parties support settlement after extensive discovery and arm's-length negotiations; no objections); *Lewis v. Chapman*, 416 F. Supp. 855, 857 (S.D.N.Y. 1976) (likelihood of success); *Fricke v. Daylin, Inc.*, 66 F.R.D. 90, 97 (E.D.N.Y. 1975) (number of objectors; strength of case); *Helfand v. New Am. Fund, Inc.*, 64 F.R.D. 86, 89-90 (E.D. Pa. 1974) (strength of merits, caliber of counsel, and nine other enumerated areas), *vacated on other grounds & remanded by Girsh v. Jepson*, 521 F.2d 153 (3rd Cir. 1975); *Wallack v. Davis*, No. 73 Civ. 4976 (LFM), 1974 WL 420, at *2 (S.D.N.Y. June 27, 1974) (absence of objectors is strong evidence of fairness); *Marcus v. Putnam*, 60 F.R.D. 441, 445 (D. Mass. 1973) (likelihood of success).

- 9 -

## VI.     THE SETTLEMENT SHOULD BE APPROVED

As a result of extensive negotiations, the Settling Parties have agreed to a resolution of the Federal Derivative Action that provides material benefits to Accuray and its shareholders.  The Settlement is comprised of multiple elements, each of which provides a benefit to Accuray.

### A.     The Settlement Is the Product of Good Faith Negotiations at Arm's-Length

As a threshold matter, the Court must determine that the Settlement was negotiated in good faith and is not the product of fraud or overreaching by, or collusion between, the negotiating parties. *See Officers for Justice*, 688 F.2d at 625; *see also In re Consol. Pinnacle W. Sec. Litig./Resolution Trust Corp.-Merabank Litig.*, 51 F.3d 194, 196, 196 n.6 (9th Cir. 1995) (taking arm's-length negotiations into account to determine whether settlement was reached in good faith); *see also In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991) (courts may focus on whether the settlement was reached as a result of good faith bargaining at arm's-length without collusion in evaluating the fairness of the proposed settlement).  The Settlement is the product of arm's-length negotiations by counsel with significant experience in complex shareholder litigation and the help of an experienced Mediator.

The extensive investigation, the lengthy arm's-length settlement discussions, as well as Plaintiffs' counsel's past experience in litigating similar actions, provided Plaintiffs not only with a clear picture of the strengths and weaknesses of the Federal Derivative Action, but also of the sufficiency of the legal and factual defenses that Defendants would raise if litigation of the Federal Derivative Action was to continue on appeal.  Having enough information to properly evaluate the claims and defenses to be asserted, Plaintiffs fought hard for improvements in the Company's corporate governance.  While the matter was on appeal, the parties participated in the Ninth Circuit Mediation Program.  After these extensive negotiations, Plaintiffs managed to resolve the Federal Derivative Action on a highly favorable basis to the Company and its shareholders without the substantial expense, risk, delay, and uncertainty of continued litigation.  Hence, the Settling Parties reached an agreement to settle the Federal Derivative Action at a point when they had an adequate understanding of the legal and factual issues surrounding the Actions.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

NOT. OF UNOPP. MOT. & UNOPP. MOT. FOR APPROVAL OF S'HOLDER DERIVATIVE SETTLEMENT & AWARD OF ATTYS' FEES & MEMO. OF PS & AS IN SUPPORT, LEAD CASE NO. C 09 05580 CW

**B.    The Risks of Establishing Liability and Damages**

**1.    Liability**

In assessing the fairness, reasonableness, and adequacy of a settlement, the court should balance the benefits of the settlement against the continuing risks of litigation. *Girsh*, 521 F.2d at 157; *Officers for Justice*, 688 F.2d at 625. There is no question that derivative actions are complex and fraught with risk. Indeed, the Ninth Circuit, in affirming the district court's approval of a settlement of a derivative action, noted that "the odds of winning [a] derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful." *Pac. Enters.*, 47 F.3d at 378. The Federal Derivative Action was no different.

In the Federal Derivative Action, Defendants filed multiple motions to dismiss and/or stay. These motions were comprehensive in scope. Although Plaintiffs believe that the claims asserted in the Federal Derivative Action were meritorious, liability was by no means assured, as Plaintiffs would face serious risks in overcoming potential defenses and in establishing liability. Joint Decl., ¶¶26-27. Further, even if Plaintiffs were successful and survived the Appeal, continued litigation would be extremely complex, costly, and of substantial duration. Joint Decl., ¶30. Document discovery would need to be completed, depositions would need to be taken, experts would need to be designated, and expert discovery conducted. Defendants' expected motions for summary judgment would have to be briefed and argued, and a trial would have to be held. Indeed, significant risks remained in prevailing against Defendants' anticipated motions for summary judgment and obtaining a favorable judgment after trial.

**2.    Damages**

Even if Plaintiffs were successful in establishing liability, to establish damages at trial, they would have had to prove, among other things, that Accuray actually suffered non-exculpated damages and that the Defendants, as a matter of law, could be held liable for those damages. Under traditional applications of Delaware law, Plaintiffs faced a formidable challenge establishing and collecting monetary damages in the Federal Derivative Action.

- 11 -

Moreover, the issue of damages to Accuray would have been hotly disputed and clearly would have been the subject of expert testimony proffered by all parties.[4] The damages assessments of experts retained by the parties would surely vary substantially and the assessment of this crucial element of Plaintiffs' claims would be reduced at trial to a '"battle of the experts.'" *See, e.g.*, *In re Emerging Commc'ns S'holders Litig.*, No. 16415, 2004 WL 1305745, at *11 (Del. Ch. May 3, 2004). It is far from certain that a jury would have disregarded Defendants' experts' opinions. Indeed, a jury might be swayed by defense experts seeking to establish that damages were caused by factors other than Defendants' wrongdoing, or, alternatively, trying to minimize the amount of the Company's damages. *See, e.g.*, *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997). Conceivably, a jury could find that there were no damages or that the damages were a mere fraction of the amount asserted by Plaintiffs.

Based upon the record and applicable law, it is clear that there were serious risks in overcoming potential defenses and in establishing liability and the issue of damages would be hotly disputed. Joint Decl., ¶¶26-27. And even if liability was established, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation. *Id.*, ¶30. Thus, as opposed to the very real risk of no recovery at all for the Company, the Settlement guarantees an outstanding result to the Company and the implementation and/or maintenance of valuable corporate governance enhancements. *Id.*, ¶7. Accordingly, the Settlement provides material benefits to Accuray and its shareholders that outweigh the risks in further litigating the Federal Derivative Action.

### 3.    The Expense, Complexity, and Duration of Continued Litigation

Another factor militating in favor of the Settlement is the complexity, expense, and likely duration of the litigation. *Officers for Justice*, 688 F.2d at 625; *Cohn*, 375 F. Supp. 2d at 859.

---

[4] *See In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 WL 31663577, at *21 (S.D.N.Y. Nov. 26, 2002) ("The determination of damages ... is a complicated and uncertain process, typically involving conflicting expert opinions. The reaction of a jury to such complex expert testimony is highly unpredictable.")

- 12 -

NOT. OF UNOPP. MOT. & UNOPP. MOT. FOR APPROVAL OF S'HOLDER DERIVATIVE SETTLEMENT & AWARD OF ATTYS' FEES & MEMO. OF PS & AS IN SUPPORT, LEAD CASE NO. C 09 05580 CW

Shareholder derivative actions are notoriously complicated actions that involve convoluted legal and factual issues that can be litigated to a conclusion on the merits only at great expense over an extended period of time. *Pac. Enters.*, 47 F.3d at 378 ("the odds of winning [a] derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful"); *Cohn*, 375 F. Supp. 2d at 852 ("Settlements of shareholder derivative actions are particularly favored because such litigation 'is notoriously difficult and unpredictable.'"). The Federal Derivative Action is not an exception to this rule.

The Settlement provides immediate and material benefits to Accuray and avoids years of delay, added expense, and uncertainty. Joint Decl., 28. A prolonged period of pre-trial proceedings and a lengthy and uncertain trial would not serve the interests of the Company and its shareholders in light of the benefits provided by the Settlement. Thus, the prospect of continued protracted expensive and uncertain litigation strongly supports approval of the Settlement.

### C. Risk of Maintaining the Action

Another factor militating in favor of the Settlement is the risk of maintaining the action. *Officers for Justice*, 688 F.2d at 625. Here, the risk of maintaining the action is relevant because the Plaintiffs had to preserve ownership of their Accuray shares in order to maintain their standing, thus they were unable to sell their Accuray holdings.[5]

### D. The Extent of Discovery and Stage of the Proceedings

The extent of discovery completed and the stage of the proceedings can be combined into one factor that the court may consider in determining the fairness, reasonableness, and adequacy of the proposed Settlement. *Officers for Justice*, 688 F.2d at 625. This factor "captures the degree of case development that ... counsel have accomplished prior to settlement. Through this lens, courts can

---

[5] In light of the non-pecuniary nature of the benefits conferred upon Accuray as a result of the Settlement, Plaintiffs believe that the "amount offered in settlement" factor is not relevant here and therefore weighs neither for nor against approval of the Settlement. *See Officers for Justice*, 688 F.2d at 625 ("The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case.").

- 13 -

determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp. Litig*., 264 F.3d 201, 235 (3rd Cir. 2001) (citation omitted).  Here, the knowledge of Plaintiffs and the proceedings themselves have reached a stage where an intelligent evaluation of the Federal Derivative Action and the propriety of settlement can be made.  Before the filing of the first, consolidated, and subsequently amended complaints and continuing thereafter, Plaintiffs conducted an extensive investigation of the allegations asserted in the Federal Derivative Action.  Plaintiffs also analyzed documents, including financial reports, press releases, and U.S. Securities and Exchange Commission filings concerning Accuray's revised backlog and related accounting issues.  Plaintiffs also thoroughly analyzed Accuray's corporate governance.  Plaintiffs also had extensive discussions with counsel for Accuray concerning the alleged misconduct. Thus, Plaintiffs developed a high degree of knowledge that allowed them to gauge the relative strengths and weaknesses of the parties' respective positions during the course of settlement negotiations. Joint Decl., ¶6.

### E.      The Experience and Views of Counsel Favor Approval

Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of those affected by the settlement – here, Accuray and its shareholders. *Officers for Justice*, 688 F.2d at 625.  Plaintiffs and Defendants, and the respective counsel for each, have independently considered the Settlement and all agree that it is in the best interest of Accuray and its shareholders.  Joint Decl., ¶8.

Here, Plaintiffs' counsel have extensive experience in the area of shareholder representative litigation.  As a result of their experience in these types of cases, Plaintiffs' counsel has unique insight into the legal and factual issues presented in the Federal Derivative Action.  Plaintiffs' counsel used that expertise and experience, to prosecute the Federal Derivative Action and ultimately to reach an excellent result for Accuray and its shareholders.

In sum, the Settlement provides substantial governance benefits to Accuray, and represents an outstanding resolution for Accuray in a case of significant complexity and costs.  Accordingly, the Settlement should be approved.

## VII. THE NEGOTIATED FEE AND EXPENSE AWARD SHOULD BE APPROVED

### A. Approval of the Negotiated Fee and Expense Award is Warranted Under the "Substantial Benefit Doctrine"

Plaintiffs' counsel's efforts in prosecuting the Federal Derivative Action and negotiating the Settlement have conferred material benefits upon Accuray. In recognition of these substantial benefits, Defendants, Accuray and their counsel have agreed that Plaintiffs' counsel should be paid the agreed-upon amount of $800,000 in attorneys' fees and reimbursement of expenses. Stipulation, ¶4.1. Counsel for Plaintiffs and counsel for Accuray agreed to the Fee and Expense Award after the principal terms of the Settlement had been reached. The amount of the Fee and Expense Award is also fair and reasonable.

The U.S. Supreme Court has endorsed this type of consensual resolution of attorneys' fee issues as the ideal toward which litigants should strive. In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the Supreme Court stated: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." Similarly, in *Officers for Justice*, 688 F.2d 620, the Ninth Circuit recognized that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id*. at 625.

Further, the Fee and Expense Award is reasonable under the "substantial benefit doctrine." Under the "substantial benefit" doctrine, counsel who prosecute a shareholders' derivative case which confers benefits on the corporation are entitled to an award of attorneys' fees and costs. As the United States Supreme Court stated in *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970), "an increasing number of lower courts have acknowledged that a corporation may receive a 'substantial benefit' from a [stockholders' action], justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature," and that "regardless of the relief granted, private stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute." *Id*. at 395-96 (citations omitted); *accord*

- 15 -

*Unite Nat'l Ret. Fund v. Watts*, No. 04-CV-3603 (DMC), 2005 WL 2877899, at *5 (D.N.J. Oct. 28, 2005) (awarding $9.2 million based on "the great benefit conferred upon [the company] as a result of the new corporate governance principles provided for in the settlement agreement").

Here, there is no question that the Settlement achieved as a result of Plaintiffs' counsel's efforts conferred material benefits upon Accuray and its shareholders. Indeed, the corporate governance measures obtained in the Settlement will not only reduce the chance of the improprieties alleged by Plaintiffs occurring in the future, but also will make the Accuray Board more effective representatives of shareholders, thus providing additional substantial benefits and value to Accuray. Accordingly, the separately negotiated attorneys' fees and expense provision should be approved.

**B.    The Agreed-Upon Fee and Expense Award Is Fair and Reasonable Under the Applicable *Johnson* Factors**

Ninth Circuit courts have used the *Johnson* factors to evaluate the reasonableness of attorneys' fee awards. *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 69-70 (9th Cir. 1975); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002). The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee (for similar work in the community); (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1987). The relevance of each of the *Johnson* factors will vary in any particular case. Rather than requiring a rigid application of each factor, the Court has discretion to apply these factors in view of the particular circumstances. *Brantley v. Surles*, 804 F.2d 321, 325-26 (5th Cir. 1986); *In re Catfish Antitrust Litig*., 939 F. Supp. 493, 502 (N.D. Miss. 1996) ("not every [*Johnson*] factor need be necessarily considered"). Here, application of the *Johnson* factors to Plaintiffs' counsel's request for approval of the Fee and Expense Award further supports this Court's approval.

- 16 -

NOT. OF UNOPP. MOT. & UNOPP. MOT. FOR APPROVAL OF S'HOLDER DERIVATIVE SETTLEMENT & AWARD OF ATTYS' FEES & MEMO. OF PS & AS IN SUPPORT, LEAD CASE NO. C 09 05580 CW

### 1.     The Time and Labor Required

The time, effort, and expense required to obtain this result for Accuray was significant. Plaintiffs' counsel devoted 3,771.52 hours to the litigation of the Federal Derivative Action, the Appeal, and the Demand, and incurred a total of $29,801.69 in unreimbursed expenses. *See* Joint Decl., ¶32. As set forth in the Joint Declaration, total attorney and paraprofessional time expended in the prosecution of this litigation results in a combined "lodestar" of $1,506,001.75.[6] *See id.* Thus, if the Court were to approve the Fee and Expense Award, Plaintiffs' counsel's multiplier on their time would amount to 0.53. *Id.*, ¶33. This negative multiplier is significantly less than the larger positive multipliers awarded in other representative actions.[7] Thus, the Fee and Expense Award is more than fair and reasonable, and should be approved.

### 2.     The Novelty and Difficulty of the Issues

Shareholder derivative actions are complex by their very nature. *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 654 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980); *see also Ross v. Bernhard*, 396 U.S. 531, 545 n.5 (1970) (stating that issues in shareholder derivative suits are likely to be complex). In order to prosecute the claims alleged in the Federal Derivative Action, the Appeal, and the Demand successfully, Plaintiffs' counsel had to research and analyze complex factual and legal issues, related to, among other things, alleged backlog and related accounting issues. Joint Decl., ¶34. Accordingly, the novelty and difficultly of the legal and factual issues faced by Plaintiffs' counsel favor a finding that the requested Fee and Expense Award is reasonable.

---

[6] The lodestar was arrived at by multiplying Plaintiffs' counsel's time by hourly rate. The rates charged by Plaintiffs' counsel are commensurate with the market rates customarily charged by attorneys who actively litigate the complex and specialized practice area of shareholder actions, including shareholder derivative actions. Joint Decl., ¶32 n.6. Accordingly, Plaintiffs' counsel also satisfy this additional *Johnson* factor.

[7] *See, e.g.*, *Vizcaino*, 290 F.3d at 1052 & app. (listing twenty-three large shareholder settlements and multipliers for each, in which the average multiplier is 3.28).

- 17 -

NOT. OF UNOPP. MOT. & UNOPP. MOT. FOR APPROVAL OF S'HOLDER DERIVATIVE SETTLEMENT & AWARD OF ATTYS' FEES & MEMO. OF PS & AS IN SUPPORT, LEAD CASE NO. C 09 05580 CW

### 3. The Skill Required and the Experience, Reputation, and Ability of Counsel

In analyzing the *Johnson* factors of the experience, reputation, and skill of the attorneys, "[t]he trial judge should closely observe the attorney's work product, his preparation, and general ability before the court." *Johnson*, 488 F.2d at 718. Here, the legal services provided and the results produced by Plaintiffs' counsel in the Federal Derivative Action, the Appeal, and the Demand reflect a high quality of experienced, reasoned work product. The background, experience, and accomplishments of Plaintiffs' counsel are summarized in the firm resumes attached to the Joint Decl., Exs. A - C. Plaintiffs' counsel's firm resumes evidence extensive experience and expertise in the field of shareholder derivative litigation. *Id.* In light of Plaintiffs' counsel's extensive experience, as well as the quality of Plaintiffs' counsel's work product, preparation, and ability, the Court should find the Fee and Expense Award reasonable under this particular *Johnson* factor.

### 4. Preclusion of Other Employment

Plaintiffs filed the Federal Derivative Action, the Appeal, and the Demand on behalf of Accuray during 2009 and 2010. Joint Decl., ¶¶10, 17-18, 36. Plaintiffs' counsel's undertaking of the prosecution of the Federal Derivative Action, the Appeal, and the Demand involved the expenditure of limited resources, including the time spent by attorneys and professional staff, as well as the substantial expenses that were incurred throughout more than two years of litigation. *Id.* Thus, Plaintiffs' counsel's acceptance of the prosecution of the Federal Derivative Action, the Appeal, and the Demand necessarily precluded them from devoting those same resources to other litigation and the prosecution of additional cases. *Id.* Accordingly, this factor supports finding the Fee and Expense Award reasonable.

### 5. Whether the Fee Is Fixed or Contingent

Another important factor in evaluating an application for fees is the contingent nature of the fee. *Johnson*, 488 F.2d at 718-19. When Plaintiffs' counsel undertook the contingent representation in the Federal Derivative Action, the Appeal, and the Demand, it was with the expectation that they would have to devote many hours of hard work to the prosecution of a case involving complex factual and legal issues without any assurance of ever getting paid for their efforts. Joint Decl., ¶37.

Here, Plaintiffs' counsel received no compensation during the course of this litigation and have incurred significant expenses in litigating this case. *Id.* Any compensation has always been at risk. *Id.* Thus, the requested Fee and Expense Award is reasonable given the risk assumed by Plaintiffs' counsel of potentially receiving no compensation for their legal services.

**6.     Awards in Similar Cases**

The Fee and Expense Award is modest compared to amounts awarded to compensate attorneys in other shareholder derivative cases, especially in light of the substantial benefits achieved as a result of the extensive corporate governance measures obtained through the Settlement. *See, e.g.*, *In re UnitedHealth Group Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1157 (D. Minn. 2009) ($29.2 million in fees in derivative settlement); *Bacas v. Way*, No. 4:07-cv-456, 2008 WL 746825, at *2 (S.D. Tex. Mar. 20, 2008) ($3 million in fees in derivative settlement with significant corporate governance reforms directly addressing allegations made in complaint); *Unite Nat'l Ret. Fund,* 2005 WL 2877899, at *5 ($9.2 million in fees for "the great benefit conferred upon Shell as a result of the new corporate governance principles provided for in the settlement agreement"); *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1207 (6th Cir. 1992) ($3.1 million in fees based upon "the anticipated impact of the corporate governance changes").

Accordingly, the Fee and Expense Award is more than reasonable as compared with the amount of attorneys' fees and reimbursement of expenses awarded in other derivative settlements, and should be approved by the Court.

**VIII.   THE SERVICE AWARDS SHOULD BE APPROVED**

As a result of the Plaintiffs' efforts on behalf of Accuray, the Company has received the material benefits contained in the Settlement. The service awards, in the amount of $1,000 each to be paid from Plaintiffs' counsel's Fee and Expense Award, requested by the Plaintiffs should be approved based on their respective time, effort, and service as representative Plaintiffs in the Federal Derivative Action. These Plaintiffs have submitted detailed declarations setting forth their respective participation in the Federal Derivative Action and interest in improving Accuray through the Corporate Governance Measures described in the Stipulation. *See* Joint Decl., Exs. D -G. These Plaintiffs, by stepping forward on behalf of the Company, have contributed to the vitality and

- 19 -

enforcement of the securities laws. *Id.* "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002); *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 844, 851 (N.D. Cal. 2005) (approving $5,000 incentive awards); *In re PayPal Litig.*, No. C-02-1227-JF PVT, 2004 WL 2445244, at *1 (N.D. Cal. Oct. 13, 2004) (approving $2,500 incentive awards). Moreover, the amount sought is reasonable. *See, e.g.*, *Simon v. Toshiba Am.*, No. 07-06292, 2010 WL 1757956, at *5 (N.D. Cal. Apr. 30, 2010) (approving $4,000 incentive award). Accordingly, the service awards should be approved.

## IX.     CONCLUSION

The Settlement achieved is a good result, given the risks presented by the litigation and the complexity and expense if the case proceeded to trial. Accordingly, Plaintiffs and their counsel respectfully submit that the Settlement and Fee and Expense Award are fair, reasonable, and adequate, and should be approved by the Court.

DATED: March 25, 2011

Respectfully submitted,

ROBBINS UMEDA LLP
MARC M. UMEDA
KEVIN A. SEELY
KELLY M. MCINTYRE

_s/Kelly M. McIntyre_
KELLY M. MCINTYRE

600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile (619) 525-3991

JOHNSON BOTTINI, LLP
FRANK J. JOHNSON
FRANCIS A. BOTTINI, JR.
KEITH M. COCHRAN
501 West Broadway, Suite 1720
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 238-0622

KENDALL LAW GROUP, LLP
JOE KENDALL

- 20 -

- 21 -

JAMIE J. MCKEY
3232 McKinney, Suite. 700
Dallas, TX 75204
Telephone: (214) 744-3000
Facsimile: (214) 744-3015

*Co-Lead Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 25, 2010.

s/Kelly M. McIntyre
KELLY M. MCINTYRE

583344

- 22 -